Peter Gibbons (CBN: 196169)
Suite E
1805 North Carson Street
Carson City, NV 89701-1216
Telephone: 480-599-7876
LawDr1@lawdr.us
Attorney for MyMail, Ltd.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EBATES PERFORMANCE MARKETING, INC. d/b/a RAKUTEN REWARDS and CARTERA COMMERCE, INC.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**MyMail, Ltd.,**<br><br>Defendant. | Case No.: 5:20-cv-04768-LHK<br><br>**Declaration of Christopher Michaels In Support Of Motion To Dismiss Complaint** |

**DECLARATION OF Christopher Michaels IN SUPPORT OF**

**DEFENDANT'S MOTION TO DISMISS COMPLAINT**

I, Christopher Michaels, declare and state as follows:

1. My name is Christopher Michaels. I am over the age of eighteen (18) and otherwise competent to give this Declaration.

2. I am a Registered Patent Attorney admitted in the State of New York.

3. I have an undergraduate degree in Chemistry from Bucknell University, a Juris Doctorate from the Syracuse University School of Law, and a Master in Business Administration from the Wharton School.

4. Brown & Michaels, PC is considered a patent prosecution firm and represents many companies before the Patent and Trademark Office including IBM and BorgWarner.

5. I have been involved in the successful prosecution of numerous software patents and we are well versed in the statutory subject matter issues related to software based inventions. It is my opinion, that the MyMail patents claim statutory subject matter and is fully consistent with the types of claims that Federal Circuit and Supreme Court have determined to be patent eligible.

6. While the firm's attorneys routinely opine on infringement issues for our clients, the firm does not represent clients as litigation counsel. The firm transferred its litigation practice to another law firm in 2001. No litigation attorneys have worked for the practice since 2001 and a simple search of PACER will see that attorneys from our firm have only been involved in litigation matters as witnesses or occasionally as patent, technical, or damages experts with distinct litigation counsel listed in every matter for roughly the past 20 years.

7. My specific practice is largely focused on the licensing and commercialization of technology. In addition to working as a patent attorney and the managing partner of Brown & Michaels, PC, I have worked as an executive and business development officer for clients over the years. My primary responsibilities included negotiating and valuing technology licenses.

8. Through my law firm, Brown & Michaels, PC, I have been engaged by MyMail, Ltd. to evaluate MyMail's patent portfolio and to manage licensing of that portfolio.

9. As part of that engagement, Brown & Michaels, PC has evaluated thousands of software programs called "*extensions*" that perform specific functions in association with a web browser program like Google Chrome. Some of those extensions can modify a toolbar and were evaluated to see if the extension infringed one of MyMail's patents.

10. As part of this engagement, Brown & Michaels, PC evaluated a web extension and sent a letter to Ebates, Inc. on June 12, 2020 along with a proposed non-

1  disclosure agreement, proposed license agreement, and evaluation of a software extension and four of the MyMail patents.

11. Ebates, Inc. is listed as a Delaware Corporation filed August 15, 2011 (*originally named Performance Marketing Brands, Inc*.) and is a distinct corporation from Ebates Performance Marketing, Inc. (*a Delaware Corporation filed July 9, 2011*). Ebates, Inc. is not a party to this action.

12. As part of our engagement by MyMail, Brown & Michaels, PC evaluated a web extension offered by Delta Airlines, Inc. and sent a letter to Delta Airlines, Inc. on June 12, 2020 along with a proposed non-disclosure agreement, proposed license agreement, and evaluation of a software extension and four of the MyMail patents.

13. Delta Airlines, Inc. is not a party to this action.

14. I fully evaluated the software provided by Delta Airlines, Inc. and in the privacy policy, Delta Airlines, Inc. specifically states: "*All information described in this Privacy Policy is processed by Delta Air Lines, Inc. ("Delta", "we", "us", or "our") as data controller*." The website link at the Google Store for the extension links to a Delta® trademark branded site.  As the owner of the trademark, Delta Airlines, Inc. is responsible for the quality of the goods and services represented by the trademark.  All public information available suggests that the application I evaluated is provided by Delta Airlines, Inc. and yet Delta Airlines, Inc. is not a party to this action.

15. I am not privy to any agreement between Delta Airlines, Inc. and Cartera Commerce, Inc. but even if Cartera Commerce, Inc. wrote all the software and then provided it to Delta Airlines, Inc. as its vendor, it is not all clear that MyMail, Ltd. would have a case against Cartera Commerce, Inc..  Merely typing computer code is not an infringement of any of the claims.  Specific steps and elements need to be practiced as delineated in the claims and as far as can be best determined from the information publicly accessible, it appears that all use of the code is by Delta Airlines, Inc.  Certainly, Delta Airlines, Inc. retains all rights to the user data and doesn't even mention Cartera Commerce, Inc. anywhere within their privacy policy.

16. Josh Raskin of Greenberg Traurig, LLP) reached out to me by phone on June 23, 2020 and notified me that he represented Ebates, Inc. and Delta Airlines, Inc. He confirmed this by e-mail on June 23, 2020 (copy attached as Exhibit A).

17. In his written communications to me on July 2, 2020, Mr. Raskin specifically states, "*As we discussed during our call last week, we have been retained by Ebates, Inc. d/b/a/ Rakuten ("Rakuten") and Delta Airlines, Inc. ("Delta") (Rakuten and Delta are collectively referred to herein as "Rakuten")*" and neither of those entities are a party to the present action.

18. At no time during our communications prior to the filing of this action, did Mr. Raskin inform me that he represented either of the Plaintiffs in this action. At all times during our interactions, I thought I was interacting with the counsel for Delta Airlines, Inc. and Ebates, Inc. because those are the entities I contacted and the entities that Mr. Raskin repeatedly stated he represented.

19. I am not litigation counsel for MyMail and will not be engaged by MyMail to act as litigation counsel.

20. In my letters I specifically stated: "*We have been engaged to evaluate potential infringement claims and make an initial attempt to resolve infringement claims before they are referred to the litigation team. MyMail has been involved in a lot of litigation and has litigators actively enforcing its patents, but it will not be this law firm that initiates any litigation against your company. I am focused on seeking a business resolution*."

21. Notably, at no point does this letter or any communication from me or Brown & Michaels, PC state that MyMail will sue. My letter states that we "*will turn our files over to litigation counsel,*" however, turning over files for evaluation by a litigation firm is not at all the same as promising to sue if a license agreement is not reached. As the Plaintiffs and Plaintiffs' counsel are well aware, litigation counsel is required to make an independent evaluation before initiating litigation or face potential sanctions and there is a pending appeal related to the patents at issue.

22. This portfolio is a unique procedural posture in that two out of the four patents are subject to an order by Judge Koh invalidating the patents under 35 U.S.C. §101 and an appeal to the Federal Circuit is pending. While MyMail is confident of its arguments on appeal, there is no reasonable dispute that Judge Koh's order is currently in effect such that it is not clear where Plaintiffs have developed a reasonable apprehension of suit prior to the resolution of the appeal.

23. In his July 2, 2020 letter Mr. Raskin references the pending appeal and specifically states that "*Although we understand that MyMail has appealed this decision, MyMail is collaterally estopped from asserting any infringement allegations based on those claims during the pendency….The remaining asserted claims - namely, claim 24 of the '863 patent, claim 1 of the '263 patent and claim 5 of the '838 patent - are insubstantially different from the claims that were found invalid in the Oovoo Decision, and thus are also invalid.*"

24. Given that Mr. Raskin is quite emphatic in his July 2, 2020 letter that MyMail is collaterally estopped from asserting infringement allegations in litigation while the current order invalidating those patents stands, the Plaintiffs could not be under any reasonable apprehension of suit unless there was some evidence that a litigation firm was going to breach that collateral estoppel. Given that I specifically stated I would not be suing, who conveyed a threat of suit to Mr. Raskin or the Plaintiffs?

25. The only communication between MyMail or me and Delta Airlines, Inc. and Ebates, Inc. specifically stated that I would not be bringing litigation. I reiterated during our phone calls that I would not be initiating litigation and specifically told Mr. Raskin that MyMail had not engaged litigation counsel on this matter.

26. Mr. Raskin points out that MyMail did not respond in writing after he argued MyMail was estopped from bringing any infringement action until it wins an appeal, so how exactly did the Plaintiffs develop a reasonable apprehension of suit given that neither me or anyone from MyMail ever communicated with the Plaintiffs?

27. It seems that the only communications with the actual Plaintiffs in this action related to MyMail's patents were between Plaintiffs and their counsel. If Mr. Raskin created an apprehension of suit for the Plaintiffs and failed to inform the Plaintiffs that MyMail had specifically agreed not to take further enforcement actions against the Rakuten related companies and customers pending negotiations, that is hardly a basis for a declaratory judgment action against MyMail, Ltd.

28. Mr. Raskin called me on June 23, 2020 to introduce himself as counsel for Delta Airlines, Inc. and Ebates, Inc. and made a specific request. Mr. Raskin explained that his clients were very interested in working out a license and that an entity related to Ebates, Inc through a common corporate parent (Rakuten) created the software used by Delta Airlines, Inc. Mr. Raskin asked if MyMail would agree to not contact Delta Airlines, Inc and other companies related to Rakuten while we negotiated a license.

29. I took Mr. Raskin's request to my client and MyMail, Ltd.. We surmised that the company that Mr. Raskin was referring to was Cartera Commerce, Inc. and we agreed not to pursue any further enforcement activities against the Rakuten related companies pending licensing negotiations.

30. When I next spoke to Mr. Raskin, I specifically went through the companies listed as customers of Cartera Commerce, Inc. on their website to confirm that we would not contact those companies. While I mentioned Cartera Commerce, Inc. by name and its customers on the website, Mr. Raskin did not state that he represented either Cartera Commerce, Inc. or any of the customers other than Delta Airlines, Inc.. Mr. Raskin confirmed that those were the companies that Rakuten wanted us to agree not to contact I informed Mr. Raskin that we had worked up an analysis of the software related to some of those companies, but agreed that we would not send letters or communicate with them while we were in negotiations.

31. I repeatedly told Mr. Raskin during our calls that my role was solely to assist MyMail with business development and licensing efforts. I also explained that MyMail's net recovery would change if MyMail engaged litigation counsel. In other

words, we had an opportunity to resolve a license far more affordably for both his clients and mine by negotiating a license now. So not only, did Mr. Raskin know that I was not going to be bringing litigation, he also knew that MyMail had not engaged litigation counsel to bring an action against any of his clients.

32. Mr. Raskin called me on July 2, 2020 to tell me that he was about to send me a letter and wanted to be sure I took his letter in the proper context. He explained that his client wanted our reaction to some substantive issues in the matter before discussing licensing terms and was concerned that my client would react negatively to the letter and pursue actions and enforcement against the other companies. I assured him that I would relay his client's interest in ultimately negotiating a license and recommend that we continue to honor our agreement to forego any enforcement efforts.

33. During our July 2, 2020 phone call, I specifically agreed to ask my client if it was willing to have me provide a substantive response to the issues raised by Mr. Raskin's letter. I discussed it with my client the next day and we agreed to provide a substantive response to further the licensing discussions.

34. Mr. Raskin and I spoke subsequently and I told him that MyMail had authorized me to prepare a response and that I was working on a written response that he would be able to share with his client.

35. As Mr. Raskin correctly points out, MyMail had not yet provided a written response to his July 2, 2020 letter before the Plaintiff's filed this action. However, Mr. Raskin and I were discussing the issues over the phone and I had promised to send a written response in due course.

36. More directly, we discussed how the pending appeal was a significant issue and that we seemed to assess MyMail's chances for success on appeal very differently. We started to discuss whether it might be best to tie a settlement/license to resolution of the appeal.

37. MyMail fully honored its agreement not to pursue any further enforcement against his clients or the other companies like American Airlines that use software provided by Cartera Commerce, Inc., such that the filing of a complaint by the Plaintiffs came as a complete surprise.

38. Upon receiving a copy of the complaint, I immediately emailed Mr. Raskin the email attached as Exhibit B expressing my surprise that he had breached our agreement that we would not pursue enforcement pending negotiations.

39. The allegations of the present complaint include the assertions that the Plaintiffs have a reasonable apprehension of suit because MyMail has brought patent litigation in the past and we sent letters to entities other than the Plaintiffs in this action.

40. However, MyMail's past litigations should have reduced any apprehension of suit in this case rather than increased it. As it appears the Plaintiffs have investigated MyMail's past litigations, they should also know that MyMail typically brought litigation then reached settlements rather than pursuing licensing negotiations prior to litigation.

41. MyMail has demonstrably shown that it is not aggressively filing infringement actions while the appeal is pending. The very fact that I was involved rather than litigation counsel spoke volumes regarding whether MyMail was likely to sue prior to resolution of the appeal. This fact was further supported by my repeated representations to Mr. Raskin that I would not be litigating the case and that MyMail preferred not to engage litigation counsel.

42. MyMail has fully honored the agreement made with Mr. Raskin to not pursue and of the related companies or customers of Plaintiffs pending negotiations.

43. I was not even aware that Ebates Performance Marketing, Inc. existed as an entity until Mr. Raskin sent a copy of the complaint in the present action.

44. I see no reasonable way that the either of the Plaintiffs could have a reasonable apprehension of suit given:

      a.    the procedural posture of the related action,

      b.    the pending appeal,

      c.    MyMail's demonstrated lack of litigation for the last several years,

      d.    the many assurances on my part that I was not bringing litigation,

      e.    my statements that MyMail had not contracted with litigation counsel for this case, and

      f.    MyMail's specific agreement not to pursue any enforcement efforts beyond negotiations with Mr. Raskin.

I declare under penalty of perjury that the foregoing declaration is true and correct.

Dated: August 14, 2020

_____
Christopher Michaels.