Peter Gibbons (CBN: 196169)
Suite E
1805 North Carson Street
Carson City, NV 89701-1216
Telephone: 480-599-7876
LawDr1@lawdr.us
Attorney for MyMail, Ltd.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EBATES PERFORMANCE MARKETING, INC. d/b/a RAKUTEN REWARDS and CARTERA COMMERCE, INC.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**MyMail, Ltd.,**<br><br>Defendant. | Case No.: 5:20-cv-04768-LHK<br><br>**Defendant's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Complaint Under 28 U.S.C. § 2201 and FRCP Rule 4(k)**<br>(as Revised 8/17/2020) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Comes now Defendant MyMail, Ltd. (*hereinafter* "*MyMail*") and moves the Court to exercise its substantial discretion under the Declaratory Judgment Act and dismiss Plaintiff Ebates Performance Marketing, Inc.'s ("*Ebates*") complaint for Declaratory Relief.

## INTRODUCTION

As set forth in the Declaration of Christopher Michaels ("*Michaels*") In Support of MyMail's Motion to Dismiss the Plaintiff's Complaint ("*Decl.*") filed concurrently herewith, Mr. Michaels is a Registered Patent Attorney who was retained by MyMail to evaluate MyMail's patent portfolio and to manage licensing of that portfolio. *Decl, p. 2, para. 8*.

As part of this engagement, Michaels' law firm, Brown & Michales, PC, evaluated a "*web extension*" and on June 12, 2020, sent a letter to Ebates, Inc. along with a proposed non-disclosure agreement, proposed license agreement, and evaluation of a software extension and four of the MyMail patents. **Decl**. *p*. *3, para 10*.

Also, as part of our engagement Brown & Michaels, PC evaluated a "*web extension*" offered by Delta Airlines, Inc. and sent a letter to Delta Airlines, Inc. on June 12, 2020 along with a proposed non-disclosure agreement, proposed license agreement, and evaluation of a software extension and four of the MyMail patents.

On June 23, 2020, Josh Raskin, an attorney with Greenberg Traurig, LLP, reached out to Michaels by phone and notified him that he represented Ebates, Inc. and Delta Airlines, Inc. He confirmed this by e-mail on June 23, 2020 (*copy attached as Exhibit A*). *Decl. p. 4, para 16*.

In his written communications to Michaels on July 2, 2020, Mr. Raskin specifically stated "*As we discussed during our call last week, we have been retained by Ebates, Inc. d/b/a/ Rakuten ("Rakuten") and Delta Airlines, Inc. ("Delta") (Rakuten and Delta are collectively referred to herein as "Rakuten")*" and neither of those entities are a party to the present action. *Decl. p.4, para 17*.

At no time during the communications prior to the filing of this action, did Mr. Raskin inform Michaels that he represented either of the Plaintiffs in this action. At all times during the interactions, Michaels thought he was interacting with the counsel for Delta Airlines, Inc. and Ebates, Inc. because those are the entities he contacted and the entities that Mr. Raskin repeatedly stated he represented. *Decl. p.4, para 18*.

In his letters Michaels specifically stated: "*We have been engaged to evaluate potential infringement claims and make an initial attempt to resolve infringement claims before they are referred to the litigation team. MyMail has been involved in a lot of litigation and has litigators actively enforcing its patents, but it will not be this law firm that initiates any litigation against your company. I am focused on seeking a business resolution.*" *Decl. p.5, para 20*.

Notably, at no point does this letter or any communication from Brown & Michaels, PC state that MyMail will sue. Michaels' letter states that we "*will turn our files over to litigation counsel,*" however, turning over files for evaluation by a litigation firm is not at all the same as promising to sue if a license agreement is not reached. As the Plaintiffs and Plaintiffs' counsel are well aware, litigation counsel is required to make an independent evaluation before initiating litigation or face potential sanctions and there is a pending appeal related to the patents at issue. *Decl. p.5, para 21*.

In particular, this portfolio is a unique procedural posture in that two out of the four patents are subject to an order by Judge Koh invalidating the patents under 35 U.S.C. §101 and an appeal to the Federal Circuit is pending. While MyMail is confident of its arguments on appeal, there is no reasonable dispute that Judge Koh's order is currently in effect such that it is not clear where Plaintiffs have developed a reasonable apprehension of suit prior to the resolution of the appeal. *Decl. p.5, para 22; Ebates Complaint, p. 3, para 20*.

In his July 2, 2020 letter Mr. Raskin references the pending appeal and specifically states that "*Although we understand that MyMail has appealed this decision, MyMail is collaterally estopped from asserting any infringement allegations based on those claims during the pendency….The remaining asserted claims - namely, claim 24 of the '863 patent, claim 1 of the '263 patent and claim 5 of the '838 patent - are insubstantially different from the claims that were found invalid in the Oovoo Decision, and thus are also invalid.*" *Decl. pp.5-6, para 23*.

I. **THE PARTIES' PRE-SUIT COMMUNICATIONS**

Mr. Raskin called Attorney Michaels on June 23, 2020 to introduce himself as counsel for Delta Airlines, Inc. and Ebates, Inc. and made a specific request. Mr. Raskin explained that his clients were very interested in working out a license and that an entity related to Ebates, Inc through a common corporate parent (Rakuten) created

the software used by Delta Airlines, Inc. Mr. Raskin asked if MyMail would agree to not contact Delta Airlines, Inc and other companies related to Rakuten while we negotiated a license. *Decl. p. 7, para 28*.

When Attorney Michaels next spoke to Mr. Raskin, he specifically went through the companies listed as customers of Cartera Commerce, Inc. on their website to confirm that MyMail would not contact those companies. While Attorney Michaels mentioned Cartera Commerce, Inc. by name and its customers on the website, Mr. Raskin did not state that he represented either Cartera Commerce, Inc. or any of the customers other than Delta Airlines, Inc.. Mr. Raskin confirmed that those were the companies that Rakuten wanted MyMail to agree not to contact. My Michaels informed Mr. Raskin that he had worked up an analysis of the software related to some of those companies, but agreed that MyMail would not send letters or communicate with them while negotiations for licensing were continuing. *Decl. p. 7, para. 30*.

Mr. Raskin called Attorney Michaels on July 2, 2020 to tell him that he was about to send him a letter and wanted to be sure Michales took his letter in the proper context. Raskin explained that his client wanted MyMail's reaction to some substantive issues in the matter before discussing licensing terms and was concerned that MyMail would react negatively to the letter and pursue actions and enforcement against the other companies. Michaels assured him that he would relay his client's interest in ultimately negotiating a license and recommend that we continue to honor the agreement to forego any enforcement efforts. *Decl. p. 8, para 32*.

During the July 2, 2020 phone call, Michaels specifically agreed to ask MyMail if it was willing to provide a substantive response to the issues raised by Mr. Raskin's letter. *Decl. p. 8, para 33*.

Mr. Raskin and Attorney Michaels spoke subsequently and Michaels told him that MyMail had authorized him to prepare a response and that he was working on a written response that he would be able to share with his client. *Decl. p. 8. para 34*.

## II. EBATES COULD HAVE NO REASONABLE OR RATIONAL APPREHENSION OF BEING SUED.

Given that Mr. Raskin is quite emphatic in his July 2, 2020 letter that MyMail is collaterally estopped from asserting infringement allegations in litigation while the current order invalidating those patents stands, the Plaintiffs could have no reasonable apprehension of suit unless there was some evidence that a litigation firm was going to breach that collateral estoppel. Given that MyMail's Patent Attorney specifically stated he would not be suing, and Ebates Complaint contains no allegation of any threat of suit, made by anyone against the Plaintiffs, the alleged fear of suit necessitating an anticipatory action for declaratory relief has no legal nor factual basis.

As stated in the "Decl," supra, the only communication between MyMail and Brown & Michaels P.C. and Delta Airlines, Inc. and Ebates, Inc. specifically stated that MyMail would not be bringing litigation.

## III. Ebates' Anticipatory Action for Declaratory Judgment in this Court.

Despite the state of on-going licensing negotiation, and knowing full well that MyMail continually asserted it would not be filing an action, and Mr. Raskin's assertion that MyMail was even precluded from filing an action until a decision was rendered by a Court of Appeals, Ebates filed this action on July 16, 2020.

## IV. Ebates Action for Declaratory Judgment in this Court is Prohibited Under FRCPRule 4(k) For Lack Of Personal Jurisdiction

As grounds for assertion of personal jurisdiction of this court over MyMail Ebates asserts the following:

a) MyMail has purposefully directed its enforcement activities related to the Asserted Patents in the Northern District of California Doc. 1 Complaint, p.1 ¶ 9.

b) MyMail, through counsel, sent a letter to Delta Airlines, Inc. ... Doc. 1 Complaint, p.2 ¶ 10.

c) The technology underlying the Cartera Accused Product is licensed to Delta, and operated, by Cartera. Doc. 1 Complaint, p.2 ¶ 11.

d) Cartera has an obligation to indemnify Delta for claims of infringement made against the Cartera Accused Product, including the claims made by MyMail. Doc. 1 Complaint, p.2 ¶ 12.

e) Cartera also licenses the Cartera Accused Product to, and operates the product for, other Cartera partners, including American Airlines, Alaska Airlines, Southwest, United, and USAA. Cartera has an obligation to indemnify these partners for claims of infringement. Doc. 1 Complaint, p.2 ¶ 13..

f) On information and belief, MyMail is an intellectual property licensing company and does not practice the alleged inventions claimed in the Asserted Patents. Doc. 1 Complaint, p.2 ¶ 14.

g) MyMail has purposefully availed itself of the privilege of conducting activities within this Judicial District by maintaining suit against ooVoo, LLC ("*ooVoo*") and IAC Search & Media, Inc. ("*IAC*") in this Judicial District, and in particular by asserting the '070 and '863 patents in MyMail, Ltd. v. ooVoo, LLC, Case No. 17-cv-04487-LHK (N.D. Cal.) and MyMail, Ltd. v. IAC Search & Media, Inc., Case No. 17-cv-004488-LHK (N.D. Cal.). Doc. 1 Complaint, p.2 ¶ 15.

h) MyMail admitted that this District is a proper venue for litigating the '070 and '863 patents in MyMail, Ltd. v. ooVoo, LLC, Case No. 17-cv-04487-LHK (N.D. Cal.) and MyMail, Ltd. v. IAC Search & Media, Inc., Case No. 17-cv-004488-LHK (N.D. Cal.). Doc. 1 Complaint, p.3 ¶ 16..

i) MyMail, by seeking to enforce the Asserted Patents against Plaintiffs, offering to license the Asserted Patents, and maintaining suit against ooVoo and IAC in this Judicial District, has purposefully availed itself of the benefits and protections of California's laws such that it should reasonably anticipate being haled into court here. Doc. 1 Complaint, p.3 ¶ 17.

j) Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 1391 because MyMail is subject to personal jurisdiction in this District. Doc. 1 Complaint, p.3 ¶ 18.

None of the grounds asserted by Ebates to establish personal jurisdiction of this court over MyMail satisfy the requirements of FRCP Rule 4(k).

## ARGUMENT

**I. This Court Should Exercise its Substantial Discretion and Dismiss this Anticipatory Action**

**A. Legal Standards.**

The Declaratory Judgment Act provides that in a case of actual controversy, a court may grant declaratory relief. 28 U.S.C. § 2201(a) ("*In a case of actual controversy . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party …*") (emphasis added). Such language is understood to give district courts "*unique and substantial discretion in deciding whether to declare the rights of litigants*." Wilton v. Seven Falls Co., 515 U.S. 277, 286, 115 S. Ct. 2137, 2142 (1995) (*rejecting the argument that district courts are authorized to decline to exercise declaratory judgment jurisdiction only in "exceptional circumstances"*).

One recognized consideration is whether the declaratory judgment plaintiff intended to preempt the patentee's infringement suit and filed first solely for forum-shopping purposes. See, e.g., Serco Servs. Co., L.P. v. Kelley Co., 51 F.3d 1037, 1040 (Fed. Cir. 1995). (dismissing declaratory suit in favor of subsequent infringement action in-part because declaratory suit was anticipatory); Nat'l Foam v. Williams Fire & Hazard Control, No. 97-cv-3105, 1997 U.S. Dist. Lexis 16734, at *21 (E.D. Pa. Oct. 28, 1997) (explaining that a court may "*dismiss the action where it is shown that the declaratory action was filed in anticipation of the impending litigation and motivated solely by considerations of forum shopping*").

Another consideration is "*whether hearing the declaratory judgment action would serve the objectives for which the Declaratory Judgment Act was created.*" EMC Corp. v. Norand Corp., 89 F.3d 807, 814 (Fed. Cir. 1996). Additional considerations may include "*the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest.*" Genentech, 998 F.2d at 938. Courts are "*cautioned against 'rigid mechanical solutions' to questions of forum,*" and advised to stress "*the importance of conservation of judicial resources and the comprehensive disposition of litigation.*" Id.

**B. Ebates Preemptive Filing, Forum Shopping, and Bad Faith Make it Manifestly Unjust to Continue this Action.**

"*The purpose of the Declaratory Judgment Act is 'to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist.'*" Hunt Mfg. Co. v. Fiskars Oy Ab, No. 97-cv-2460, 1997 U.S. Dist. Lexis 15457, at *7-8 (E.D. Pa. Sep. 30, 1997) (quoting Genentech, 998 F.2d at 937). In the patent context, the Act serves to provide a remedy "*where a patentee delays suit in order to further damage the alleged infringer's business.*" Hunt, 1997 U.S. Dist. Lexis 15457, at *8. When, by contrast, a declaratory action is filed in anticipation of impending litigation and is motivated by forum shopping, the action "*falls outside the Act's purpose.*" Id.

Likewise, when a declaratory action is filed while the parties are engaged in ongoing negotiations, "*the need for judicial relief is not as compelling as in cases in which there is no real prospect of a non-judicial resolution of the dispute.*" EMC, 89 F.3d at 814. In such circumstances, the declaratory judgment complaint may be viewed "*as a tactical measure filed in order to improve the [plaintiff's] posture in the ongoing negotiations - not a purpose that the Declaratory Judgment Act was designed to serve.*" Id. at 815. See also National Foam, 1997 U.S. Dist. Lexis at *25 (permitting

such declaratory actions "*to go forward would discourage similar efforts at informal resolutions and promote 'irresponsible litigation*.'").

As a result, the case law is replete with examples of courts finding an exception to the first-filed rule when the declaratory action was anticipatory and filed during settlement negotiations. See, e.g., EMC, 89 F.3d at 815 (finding that declaratory judgment complaint was filed as a tactical measure where, one day later, the accused infringer told the patentee that it "*would like to continue to discuss with you all the options hopefully in a more meaningful manner over the near term.*"); Hunt, 1997 U.S. Dist. Lexis 15457, at *10 (finding that declaratory action was filed "*solely for forum-shopping purposes*" where plaintiff filed shortly after leading patentee to believe plaintiff would enter settlement negotiations); Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., 350 F. Supp. 2d 620, 623 (E.D. Pa. 2004) (deeming declaratory action anticipatory where patentee "*delayed its filing in reliance upon ongoing settlement negotiations and partial cooperation with its request*," and accused infringer filed its complaint while "*the parties were attempting to settle the dispute without resort to litigation*"). See also In re Founds. Worldwide, Inc., 542 F. App'x 998, 999 (Fed. Cir. 2013) (non- precedential) (*affirming inapplicability of first-filed rule based on finding that declaratory action was prepared* "*while [the accused infringers] were claiming to pursue a non-legal resolution,*" *which amounted to* "*inequitable conduct leading up to an anticipatory suit*"); Teledyne Techs., Inc. v. Harris Corp., No. 11-cv-00139, 2011 U.S. Dist. Lexis 71370, at *7 (C.D. Cal. July 1, 2011) (concluding that principles of justice weighed in favor of dismissal where accused infringer filed declaratory action after continuing to express interest in "*advancing the ball towards the goal line*" as it pledged to "*keep in touch*" in advance of subsequent meetings); NSI Corp. v. Showco, Inc., 843 F. Supp. 642, 646 (D. Or. 1994) (dismissing declaratory action where plaintiff "*took advantage of the fact that [trademark owner] had deferred the filing of expensive and probably protracted litigation because of its belief that settlement negotiations were under way*").

### C. Ebates Stated Grounds for Personal Jurisdiction of This Court Over MyMail Fail to Satisfy the Requirements of FRCP Rule 4(k)

Rule 4(k)(1) Establishes territorial jurisdiction of a federal District Court where the defendant is subject to the general jurisdiction of the forum state; [Rule 4(k)(1)(A)] or where a party (the defendant in this case) is joined to the action under Rule 14 or 19; [Rule 4(k)(1)(B)] or when authorized by a federal statute. [Rule 4(k)(1)(C)]. Since MyMail is not subject to the general jurisdiction of California, nor has the Plaintiff asserted any facts that would bring MyMail within the long-arm statute of California sufficient to establish minimum contacts such that personal jurisdiction would attach to MyMail, Ebates has not established personal or territorial jurisdiction of this court over MyMail under FRCP 4(k)(1).

The California Corporations Code ("*C.Crp.C*") § 191 sets forth the scope of California's long-arm statute over foreign businesses. As alleged by Ebates in its complaint, MyMail is a Texas limited partnership making it a foreign partnership with respect to the Northenr District of California. C.Crp.C § 191(b) States that "*A foreign corporation shall not be considered to be transacting intrastate business merely because its subsidiary transacts intrastate business.*" Further, C.Crp.C § 191(c) states in relevant part as follows:

> C.Crp.C § 191(c)
> (c) Without excluding other activities which may not constitute transacting intrastate business, a foreign corporation shall not be considered to be transacting intrastate business within the meaning of subdivision (a) solely by reason of carrying on in this state any one or more of the following activities:
> (1) Maintaining or defending any action or suit or any administrative or arbitration proceeding, or effecting the settlement thereof or the settlement of claims or disputes.
> (2) Holding meetings of its board or shareholders or carrying on other activities concerning its internal affairs.
> (3) Maintaining bank accounts.
> (4) Maintaining offices or agencies for the transfer, exchange and registration of its securities or depositaries with relation to its securities.
> (5) Effecting sales through independent contractors.
> (6) Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts.
> (7) Creating evidences of debt or mortgages, liens or security interests on real or personal property.

(8) Conducting an isolated transaction completed within a period of 180 days and not in the course of a number of repeated transactions of like nature.

Thus, each of the actions alleged by Ebates in its complaint to assert the territorial or personal jurisdiction of this court over MyMail are specifically exempted under C.Crp.C § 191(c), such that the requirements of FRCP Rule 4(k)(1) are not satisfied.

Similarly, the requirements for territorial jurisdiction under Rule 4(k)(2) have net ben met either. Rule 4(k)(2) was introduced by the 1993 amendment to the FRCP. It provides a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any single state, but has sufficient contacts with the U.S. as a whole to satisfy due process standards and justify application of federal law. Rule 4(k)(2) approximates a federal long arm statute, allowing district courts to exercise personal jurisdiction even if the defendant's contacts with the forum state would not support jurisdiction under that state's long arm statute, as long as (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to personal jurisdiction in the courts of any state (the "negation requirement"), and (3) the exercise of jurisdiction satisfies due process requirements.

In this case however, MyMail is most certainly subject to the in personam jurisdiction of the state of Texas and the Northern District Court in particular. Thus the second element of Rule 4(k)(2) cannot be satisfied by the Plaintiff here. [See: <u>Merial Limited v. Cipla Limited</u>, Nos. 11-1471, -1472 Fed. Cir. (May 31, 2012) In discussing the negation requirement, the Federal Circuit previously stated that a defendant can "avoid the application of [Rule 4(k)(2)] only when it designates a suitable forum in which the plaintiff could have brought suit." <u>Touchcom, Inc. v. Bereskin & Parr</u>, 574 F.3d 1403, 1415 (Fed. Cir. 2009). The Federal Circuit now clarifies that "*a defendant cannot defeat Rule 4(k)(2) by simply naming another state; the defendant's burden under the negation requirement entails identifying a forum where the plaintiff could have brought suit - a forum where jurisdiction would have been proper at the time of*

*filing, regardless of consent.*"] [See also: Daimler AG v BaumanDaimler AG, 134 S. Ct., 751. "*A court may assert general jurisdiction over foreign sister-state or foreign-country corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.*" Id. @ 754. And; "*Although the placement of a product into the stream of commerce may bolster an affiliation germane to specific jurisdiction, such contacts do not warrant a determination that, based on those ties, the forum has general jurisdiction over a defendant.*" Id. @ 757. And; "*A corporation's continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.*" Id. @ 757. And "*General jurisdiction requires affiliations so continuous and systematic as to render the foreign corporation essentially at home in the forum State, ...*" i.e., comparable to a domestic enterprise in that State. Id. @ 761. ]

As required under 28 U.S.C. § 1391, the proper venue for this action is the district where the defendant resides or is domiciled. That location would be the Northern District of Texas. Given that the events or omissions giving rise to this claim occurred in cyberspace, in the process of prosecuting an action in this court, by letter, by phone call, and by e-mail, no argument can be maintained to suggest that "*substantial part of the events or omissions giving rise to the claim occurred*" in the Northern District of California. Consequently, the defendant moves this court to dismiss the action for lack of personal jurisdiction over MyMail in this case.

## CONCLUSION

Here there is little doubt that the Plaintiffs have filed this action in bad faith. This court lacks personal jurisdiction over the defendant in this case. Therefore, for all of the foregoing reasons, this Court should grant Defendant MyMail's Motion to Dismiss Plaintiff's Complaint.

Respectfully submitted,

This, August 17, 2020

_____
Peter Gibbons
Attorney for MyMail, Ltd.
Law Office of Gibbons & Associates
1805 North Carson Street, Suite E
Carson City, Nevada 89701-1216
775-434-1856 Ph.
775-276-6927 Fax
LawDr1@lawdr.us