1  Joshua L. Raskin (*pro hac vice*)
   raskinj@gtlaw.com
2  Allan A. Kassenoff (*pro hac vice*)
   kassenoffa@gtlaw.com
3  Vimal M. Kapadia (*pro hac vice*)
   kapadiav@gtlaw.com
4  Elana B. Araj (*pro hac vice*)
   araje@gtlaw.com
5  GREENBERG TRAURIG, LLP
   MetLife Building
6  200 Park Avenue
   New York, New York 10166
7  Telephone: 212.801.9200
   Facsimile: 212.801.6400

   Nicholas A. Brown (SBN CA 198210)
   brownn@gtlaw.com
   GREENBERG TRAURIG, LLP
   Four Embarcadero Center, Suite 3000
   San Francisco, California 94111
   Telephone: 415.655.1300
   Facsimile: 415.520.5609

   *Attorneys for Plaintiffs Ebates Performance Marketing, Inc. d/b/a Rakuten Rewards and Cartera Commerce, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EBATES PERFORMANCE MARKETING, INC. d/b/a RAKUTEN REWARDS and CARTERA COMMERCE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MYMAIL, LTD., <br><br> Defendant. | CASE NO. 20-cv-04768-LHK <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT UNDER 28 U.S.C. § 2201 AND FRCP RULE 4(k) (as Revised 8/17/20)** |

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | FACTUAL BACKGROUND | | 2 |
| | A. | The Parties | 2 |
| | B. | MyMail's Patent Enforcement Letters And Plaintiffs' Response | 3 |
| | C. | MyMail's Prior Enforcement Of The '070 and '863 Patents In This Court | 4 |
| III. | ARGUMENT | | 5 |
| | A. | This Action Satisfies The Requirements of 28 U.S.C. § 2201 And Should Not Be Dismissed As "Anticipatory" | 5 |
| | B. | This Court Has Personal Jurisdiction Over MyMail | 8 |
| IV. | CONCLUSION | | 12 |

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Arkema Inc. v. Honeywell Int'l, Inc.*,
706 F.3d 1351 (Fed. Cir. 2013)...................................................................................................7

*Arris Grp., Inc. v. British Telecommunications PLC*,
639 F.3d 1368 (Fed. Cir. 2011)...................................................................................................6

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
566 F.3d 1012 (Fed. Cir. 2009)...................................................................................................8

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
552 F.3d 1324 (Fed. Cir. 2008).................................................................................................10

*Bayer Healthcare LLC v. Nektar Therapeutics*,
2018 WL 1258202 (N.D. Cal. Mar. 12, 2018)..........................................................................10

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)...................................................................................................................11

*Capo, Inc. v. Dioptics Medical Products, Inc.*,
387 F.3d 1352 (Fed. Cir. 2004)...................................................................................................5

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ..................................................................................................................11

*Elecs. for Imaging, Inc., v. Coyle*,
340 F.3d 1344 (Fed. Cir. 2003).................................................................................................12

*EMC Corp. v. Norand Corp.*,
89 F.3d 807 (Fed. Cir. 1996).......................................................................................................7

*Fluidigm Corp. v. bioMerieux, SA*,
2019 WL 6612063 (N.D. Cal. Dec. 5, 2019)...........................................................................8, 9

*Genetech v. Eli Lilly & Co.*,
998 F.2d 931 (Fed. Cir. 1993).....................................................................................................6

*Genetic Veterinary Sci., Inc. v. LABOKLIN GmbH & Co.*,
933 F.3d 1302 (Fed. Cir. 2019)..............................................................................................8, 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)...................................................................................................................10

*Hanson v. Denckla*,
357 U.S. 235 (1958).....................................................................................................................9

*Inherent.com v. Martindale-Hubbell*,
420 F. Supp. 2d 1093 (N.D. Cal. 2006)...................................................................................1, 8

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945).....................................................................................................................2

*Jack Henry & Assoc., Inc. v. Plano Encryption Tech., LLC*,
    910 F.3d 1199 (Fed. Cir. 2018) .................................................................................... 10

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ........................................................................................... 6, 7, 8

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014) .......................................................................................... 6

*In re Mobile Telecommunications Tech. LLC*,
    247 F. Supp. 3d 456 (D. Del. 2017) ................................................................................ 6

*Platte River Ins. Co. v. P & E Automation, Inc.*,
    2013 WL 12123688 (C.D. Cal. Jun. 19, 2013) ............................................................... 9

*SanDisk Corp. v. STMicroelectronics, Inc.*,
    480 F.3d 1372 (Fed. Cir. 2007) ............................................................................... 5, 6, 7

*Sony Elec., Inc. v. Guardian Media Tech., Ltd.*,
    497 F.3d 1271 (Fed. Cir. 2007) .................................................................................. 6, 7

*Viam Corp. v. Iowa Exp.-Imp. Trading Co.*,
    84 F.3d 424 (Fed. Cir. 1996) ......................................................................................... 11

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KGG*,
    848 F.3d 1346 (Fed. Cir. 2017) .................................................................... 9, 10, 11, 12

## I. INTRODUCTION

Plaintiffs Ebates Performance Marketing, Inc. d/b/a Rakuten Rewards ("Rakuten Rewards") and Cartera Commerce, Inc. ("Cartera") (collectively, "Plaintiffs") respectfully file this Opposition to Defendant MyMail, Ltd.'s ("MyMail") Motion to Dismiss the Complaint Under 28 U.S.C. § 2201 and FRCP Rule 4(k) (as Revised 8/17/20) (Dkt. 29-1) ("Motion to Dismiss" or "Motion"). Plaintiffs filed this action on July 16, 2020 (the "Action"), seeking a declaratory judgment of non-infringement of U.S. Patent Nos. 10,228,838 (the "'838 patent"), 9,021,070 (the "'070 patent"), 9,141,263 (the "'263 patent"), and 8,275,863 (the "'863 patent") (collectively, the "patents-in-suit"). On August 14, 2020 (and corrected on August 17, 2020), Defendant MyMail filed its Motion to Dismiss, arguing that (1) the Court should decline to exercise jurisdiction over this Declaratory Judgment Action because it was filed as an "anticipatory suit" (Motion at 8-9) and (2) the Court lacks personal jurisdiction over MyMail (*id.* at 10-12).

As demonstrated below, jurisdiction exists over Plaintiffs' Complaint seeking declaratory relief given the existence of a "definite and concrete" dispute between Plaintiffs and MyMail concerning the patents-in-suit. Specifically, there is no dispute that MyMail's attorney, Mr. Christopher Michaels, sent letters to Rakuten Rewards' parent company as well as Delta Airlines, Inc. (a customer and business partner of Cartera) on June 12, 2020, identifying the four patents-in-suit together with claim charts purporting to demonstrate infringement. (Dkt. 1, ¶¶9-10, 25-26; Dkt. 1-5, Dkt. 1-6). Further, Mr. Michaels' letters included threats of litigation, stating that "MyMail has been involved in a lot of litigation and has litigators actively enforcing its patents" and if license agreements are not entered into, "we will turn our files over to litigation counsel." (*Id.*) In short, Plaintiffs filed this Action in direct response to MyMail's threats of litigation and not as an "anticipatory suit," as alleged by MyMail. But, even if this case had been filed as an anticipatory suit, the "anticipatory suit exception" is an exception to the first-to-file rule that *only* applies where a defendant is seeking dismissal of a first-filed action in favor of a later filed action. *See Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006). Because MyMail has not filed its own case, there is no second action and the anticipatory suit exception to the first-filed rule is inapplicable.

MyMail's second argument – that there is no personal jurisdiction over it in this Court – is equally unavailing. According to MyMail, "California Corporations Code ('C.Crp.C') § 191 sets forth the scope

of California's long-arm statute" and "each of the actions alleged by [Plaintiffs] in [their] complaint to assert territorial or personal jurisdiction of this court over MyMail are specifically exempted under C.Crp.C. § 191(c)." (Motion at 10-11). But, California's long arm statute is found in Cal. Code Civ. Proc. § 410.10 – not California Corporations Code § 191 – and, thus, MyMail's jurisdictional analysis is fundamentally flawed and should be disregarded. Moreover, under the correct legal framework, the factual allegations in the Complaint, which MyMail does not dispute in its Motion, conclusively demonstrate that personal jurisdiction exists over MyMail in the Northern District of California. First, MyMail's act of sending a patent enforcement letter to Rakuten Rewards' parent, located *in this Judicial District*, alleging that Rakuten Rewards' "Rakuten Cash Back Button" infringes the patents-in-suit establishes the requisite "minimum contacts" within California. (Dkt. 1, ¶¶9, 25; Dkt. 1-5). Second, the exercise of jurisdiction over MyMail would not offend "traditional conception[s] of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945), given the above letter and MyMail's prior attempts to enforce two of the patents-in-suit in this Court. (Dkt. 1, ¶¶15-17). Accordingly, because the "anticipatory suit exception" is inapplicable to the facts of this case and personal jurisdiction exists over MyMail in this Court, MyMail's Motion should be denied.

## II. FACTUAL BACKGROUND

### A. The Parties

Plaintiff Rakuten Rewards is a wholly-owned subsidiary of Ebates, Inc. d/b/a Rakuten ("Rakuten") and is located in San Mateo, California. (Dkt. 1, ¶¶3-4). Rakuten Rewards was founded in 1998 and is a pioneer and leader in online cash rebate shopping. (https://www.businesswire.com/news/home/20160324005136/en/). Specifically, Rakuten Rewards pays consumers cash rebates when they shop online and provides them with coupons and other online bargains. (*See* https://www.rakuten.com/). In approximately 2012, Rakuten Rewards developed the "Rakuten Cash Back Button," which is a "browser extension" for use with various internet web browsers, including Google Chrome. After installation, this browser extension finds rewards in the form of coupons, deals, and/or cash rebates and displays a "button" (the Rakuten Cash Back Button) that the consumer can click in order to receive the rewards. (*See* https://www.rakuten.com/button.htm).

Plaintiff Cartera, also a wholly-owned subsidiary of Rakuten, is a rewards company that partners

with companies that use loyalty programs to reward their customers. (*See* Dkt. 1, ¶4; https://www.cartera.com/). Some of Cartera's partners include American Airlines, Alaska Airlines, Southwest, United, USAA, and Delta Airlines. (*Id.*; Dkt. 1, ¶¶11-13). Cartera licenses a rewards "button" (the "Cartera Button") to, and operates it for, its partners. (*Id.*) The Cartera Button is also a "browser extension" which, upon installation, provides users (i.e., customers of Cartera's partners) with the ability to earn rewards with respect to their loyalty programs. (*See* https://www.skymilesshopping.com/button/).

Defendant MyMail is an intellectual property licensing company located in Texas. (Dkt. 1, ¶¶5, 14). MyMail does not practice any of the alleged inventions claimed in the patents-in-suit. (*Id.* at ¶14).

### B. MyMail's Patent Enforcement Letters And Plaintiffs' Response

On June 12, 2020, Mr. Michaels, on behalf of MyMail, sent a letter to Rakuten, alleging that the Rakuten Cash Back Button infringes the patents-in-suit (the "Rakuten Letter"). (Dkt. 1, ¶¶9, 25; Dkt. 1-5). The letter was sent to Rakuten Rewards' business address, 800 Concar Drive, San Mateo, California 94402, which is located in this Judicial District. (Dkt. 1, ¶3; Dkt. 1-5). The Rakuten Letter included claim charts purporting to demonstrate that the Rakuten Cash Back Button infringes various claims of the patents-in-suit as well as a proposed license agreement. (Dkt. 1, ¶9, 25; Dkt. 1-5). That same day, Mr. Michaels sent a letter to one of Cartera's partners, Delta Airlines, Inc., alleging that the Cartera Button infringes the patents-in-suit (the "Cartera Letter"). (Dkt. 1, ¶10, 26; Dkt. 1-6). The Cartera Letter also included claim charts purporting to demonstrate how the Cartera Button infringes various claims of the patents-in-suit[1] as well as a proposed license agreement. (*Id.*)

The Rakuten Letter and the Cartera Letter are virtually identical (other than identifying different accused products) and both include the following statements:

- "We have included a claim chart that provides *a detailed analysis of your product's infringement* of the patent claims. This letter, source code print out, and claim chart *serve as notice of infringement*."[2] (Dkt. 1-5 at 2; Dkt. 1-6 at 2).

- "[The undersigned counsel] has been engaged to evaluate potential infringement claims and make an initial *attempt to resolve infringement claims before they are referred to the litigation*

---
[1] Both sets of claim charts identify the following asserted claims: claims 1, 5, 9 and 17 of the '070 patent, claims 1 and 24 of the '863 patent, claim 1 of the '263 patent, and claim 5 of the '838 patent. (Dkt. 1, ¶¶25-26; Dkt. 1-5, Dkt. 1-6).
[2] Emphasis added unless otherwise noted.

*team.*" (Dkt. 1-5 at 3; Dkt. 1-6 at 3).

- "*MyMail has been involved in a lot of litigation and has litigators actively enforcing its patents*, . . .." (*Id.*)

- "We are certainly aware of *the expense and risk of litigation*." (*Id.*)

- Please respond by June 24, 2020 or we will assume that you are not interested in a business resolution. The offer to license described above *will terminate and we will turn our files over to litigation counsel*." (Dkt. 1-5 at 4; Dkt. 1-6 at 4).

On July 2, 2020, Plaintiffs, through their counsel, sent a single response to the Rakuten and Cartera Letters, explaining that MyMail is collaterally estopped from asserting infringement of the claims identified in the claim charts based upon this Court's May 7, 2020 Order invalidating claims of the '863 and '070 patents[3] and why neither accused product infringes the patents-in-suit. (Dkt. 1, ¶27; Dkt. 1-7). Plaintiffs' letter concluded by stating that "*before commencing any licensing discussions*, please let us know your thoughts on the [issues raised in the letter]." (*Id.*) MyMail never provided a written response to this letter. (Declaration of Joshua L. Raskin ("Raskin Decl."), ¶¶7-9). Nor has MyMail explained why Plaintiffs should take a license to patents which this Court previously determined to be invalid. (*Id.* at ¶¶7-11). Indeed, MyMail's demand was that Plaintiffs pay more than $37 million for a license. (Dkt. 1-5; Dkt. 1-6). Accordingly, the parties never engaged in any settlement discussions prior to the filing of this Action. (Raskin Decl., ¶¶2-11).

### C. MyMail's Prior Enforcement Of The '070 and '863 Patents In This Court

As discussed above, and explained by MyMail's counsel in the Rakuten and Cartera Letters, "MyMail has been involved in a lot of litigation and has litigators actively enforcing its patents." (Dkt. 1-5, Dkt. 1-6). In the past seven years, MyMail has initiated at least thirty patent litigations, including at least eleven actions relating to one or more of the patents-in-suit. (Dkt. 1, ¶28). Two of those eleven actions were litigated in this Court (*id.* at ¶20): *MyMail, Ltd. v. ooVoo, LLC*, Case No. 17-cv-04487-LHK (N.D. Cal.) (the "ooVoo Action") and *MyMail, Ltd. v. IAC Search & Media, Inc.*, Case No. 17-cv-04488-LHK (N.D. Cal.) (the "IAC Action").

MyMail filed the ooVoo and IAC Actions on November 18, 2016 in the United States District

---

[3] *MyMail, Ltd. v. ooVoo, LLC*, 2020 WL 2219036 (N.D. Cal. May 7, 2020).

Court for the Eastern District of Texas, asserting that ooVoo and IAC each infringes claims 1-5, 9-13, 16-17, 19-20, and 23 of the '863 patent and claims 1-3 and 15-22 of the '070 patent.[4] (IAC Action, Dkt. 168). On June 8, 2017, MyMail, ooVoo and IAC filed a joint motion to transfer the ooVoo and IAC Actions to this Judicial District. (IAC Action, Dkt. 69). The cases were transferred on August 7, 2017 and assigned to this Court. (*Id.* at Dkt. 71). On May 7, 2020, in a thirty-nine-page opinion ("May 7, 2020 Order"), this Court granted defendants' Renewed Motion for Judgment on the Pleadings, holding all asserted claims in the ooVoo and IAC Actions invalid as claiming patent ineligible subject matter. (*Id.* at Dkt. 163). That same day, the Court entered final judgment in favor of the defendants. (*Id.* at Dkt. 164). On May 13, 2020, MyMail filed a notice of appeal with respect to the Court's May 7, 2020 Order. (*Id.* at Dkt. 165). On July 30, 2020, this Court entered an Order finding that this Action is related to the ooVoo and IAC Actions. (Dkt. 26).

### III. ARGUMENT

#### A. This Action Satisfies The Requirements of 28 U.S.C. § 2201 And Should Not Be Dismissed As "Anticipatory"

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The 'actual controversy' requirement . . . is rooted in Article III of the Constitution, which provides federal jurisdiction over only 'cases and controversies.'" *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007). "Although the district court is given the discretion, in declaratory judgment actions, to dismiss the case, there are boundaries to that discretion." *Id.* at 1383. "[T]he exercise of discretion must be supported by a sound basis for refusing to adjudicate an actual controversy." *Id.*; *see also Capo, Inc. v. Dioptics Medical Products, Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004) ("There must be well-founded reasons for declining to entertain a declaratory judgment action."). "Absent such reasons, precedent establishes that when . . . an actual controversy exists . . . the accused infringer has the right to resolve the dispute." *Capo*, 387 F.3d at 1355; *see also SanDisk*,

---

[4] The '263 and '838 patents are continuations of the '070 and '863 patents. All four of the patents-in-suit have the same specification. (Dkt. 1, ¶20).

480 F.3d at 1383 ("'When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal.'") (quoting *Genetech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)).

According to MyMail, Plaintiffs "could have no reasonable or rational apprehension of being sued," (Motion at 5), and, thus, there is no "case of actual controversy." However, "the Supreme Court [in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)] abrogated [the] 'reasonable apprehension of suit' test." *Sony Elec., Inc. v. Guardian Media Tech., Ltd.*, 497 F.3d 1271, 1283 (Fed. Cir. 2007); *see also SanDisk*, 480 F.3d at 1380 ("The Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit test."). Instead, the Supreme Court "required only that *the dispute be definite and concrete*, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be under hypothetical facts." *Sony Elec.*, 497 F.3d at 1283 (internal citations and quotations omitted). As set forth in the Complaint, MyMail unequivocally alleged in its pre-suit communications that the Rakuten Rewards and Cartera Buttons infringe the patents-in-suit.[5] (Dkt. 1, ¶¶25-26; Dkt. 1-5; Dkt. 1-6). In fact, Mr. Michaels expressly stated that his letters and "claim chart[s] serve as notice of infringement" and that the claim charts "provide[] a detailed analysis of your product's infringement of the patent claims." (Dkt. 1-5 at 2; Dkt. 1-6 at 2). MyMail further threatened that absent a license, it would "turn our files over to litigation counsel." (Dkt. 1-5 at 4; Dkt. 1-6 at 4). These statements, coupled with MyMail's not-so veiled threat that it "has been involved in a lot of litigation and has litigators actively enforcing its patents" (Dkt. 1-5 at 3; Dkt. 1-6 at 3), and the fact that MyMail has

---

[5] While the pre-suit communications were sent to Rakuten and Delta, and not Rakuten Rewards and Cartera, courts have consistently held that "specific" and "repeated" infringement allegations with respect to a declaratory judgment plaintiff's *product* are sufficient to establish a case or controversy. *See, e.g., Arris Grp., Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1372 (Fed. Cir. 2011) (holding that declaratory judgment jurisdiction existed because, *inter alia*, "[t]he presentation specifically and repeatedly identified [plaintiff's product] as embodying numerous elements and performing numerous method steps of the asserted claims"); *see also In re Mobile Telecommunications Tech. LLC*, 247 F. Supp. 3d 456, 461 (D. Del. 2017) ("Such repeated references identifying DJ Plaintiffs' products as infringing may give rise to a 'substantial controversy' about whether those products infringe the patents-in-suit."). In addition, the Cartera Letter was sent to Cartera at skyhmilesshopping@cartera.com (Dkt. 1-6) and Cartera is obligated to defend Delta against infringement claims made with respect to the Cartera Button. *See Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) ("If Appellees had an obligation to indemnify their customers, they would then have standing to bring suit [for a declaratory judgment].") (citing *Arris Grp.,* 639 F.3d at 1375).

initiated at least thirty patent litigations, including at least eleven actions relating to one or more of the patents-in-suit, over the past seven years (Dkt. 1, ¶28), establish a "definite and concrete" dispute between Plaintiffs and MyMail, placing this Action squarely within the scope of the Declaratory Judgment Act and the jurisdiction of this Court.[6] *See Sony Elec.*, 497 F.3d at 1285 ("Nothing about this dispute makes it unfit for judicial resolution. . .. Indeed, [patentee] has explicitly identified the patents it believes that [plaintiff] infringes, the relevant claims of those patents, and the relevant [plaintiff] products that it alleges infringe those patents.").

MyMail also argues that this Court should exercise its discretion and decline to entertain this declaratory judgment action because the Complaint was allegedly "filed while the parties [were] engaged in ongoing negotiations." (Motion at 8 (citing *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir. 1996)).[7] However, MyMail is wrong both on the facts and the law. First, the parties were *not* in licensing discussions prior to the filing of this Action. Rather, as set forth in the Complaint, Plaintiffs' July 2, 2020 letter to MyMail concludes by stating that "*before commencing any licensing discussions*, please let us know your thoughts on [the issues raised in the letter]." (Dkt. 1, ¶27; Dkt. 1-7). MyMail never responded to this letter and, thus, licensing negotiations never commenced. (Raskin Decl., ¶¶ 7-11). Moreover, even if the parties had been in the midst of discussing a potential license, the Federal Circuit has "declined to hold that the patentee's apparent willingness to engage in licensing discussions prevented the plaintiff from maintaining a declaratory judgment action." *Sony Elec.,* 497 F.3d at 1284-86 (holding that jurisdiction over the declaratory judgment action existed "even if the parties' interactions in this case could be characterized as 'negotiations'"); *see also SanDisk*, 480 F.3d at 1382 n.3 (reversing the district court's dismissal of a declaratory judgment action based in-part on the fact that "licensing negotiations had not been terminated" because "a party to licensing negotiations is of course within its rights to terminate negotiations when it appears that they will be unproductive").[8]

---

[6] These facts also gave the Plaintiffs a reasonable apprehension of suit by MyMail. "While a declaratory judgment plaintiff is no longer required to demonstrate a reasonable apprehension of suit, such a showing remains sufficient to establish jurisdiction." *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1358 n.5 (Fed. Cir. 2013) (citations omitted).

[7] MyMail's reliance on *EMC* is inapposite. In *EMC*, the Federal Circuit's statements regarding "ongoing licensing negotiations" were made in the context of the "reasonable apprehension of suit" test, which the Supreme Court overruled in *MedImmune. See EMC*, 89 F.3d at 811; *see also MedImmune*, 549 U.S. at 137.

[8] MyMail's suggestion that Plaintiffs filling of their declaratory judgement action was "motivated by forum shopping," (Motion at 8), is also incorrect. Plaintiffs' choice of jurisdiction was the result of, among other things, the fact that this

Lastly, MyMail argues that the Court should dismiss this Action as an "anticipatory suit," arguing that "the case law is replete with examples of courts finding an exception to the first-filed rule when the declaratory action was anticipatory." (Motion at 9). MyMail's argument again lacks a factual and legal basis. As an initial matter, this Action was *not* an "anticipatory suit," but was instead brought by Plaintiffs due to the existence of a "definite and concrete" dispute concerning the patents-in-suit. *MedImmune*, 549 U.S. at 127; (*see also* Dkt. 1, ¶¶25-27; Dkt. 1-5; Dkt. 1-6; Dkt. 1-7; Raskin Decl., ¶¶2-11). Additionally, the "anticipatory suit exception" is an exception to the first-filed rule when there is a subsequently filed infringement action.[9] *See Inherent.com*, 420 F. Supp. 2d at 1097 ("The anticipatory suit exception is rooted in a concern that a plaintiff should not be deprived of its traditional choice of forum because a defendant with notice of an impending suit first files a declaratory relief action over the same issue in another forum." (quotations and citations omitted)). However, MyMail has not filed a second, separate lawsuit and, as such, the "anticipatory suit exception" is inapplicable. For all of these reasons, the Court should deny MyMail's Motion to Dismiss.

### B.  This Court Has Personal Jurisdiction Over MyMail

"Because the [personal] jurisdictional issue is 'intimately involved with the substance of the patent laws,' Federal Circuit law governs." *Fluidigm Corp. v. bioMerieux, SA*, 2019 WL 6612063, at *3 (N.D. Cal. Dec. 5, 2019) (quoting *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009)). "Where, [as here], the district court's disposition as to personal jurisdiction is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only make a *prima facie* showing that defendants are subject to personal jurisdiction." *Genetic Veterinary Sci., Inc. v. LABOKLIN GmbH & Co.*, 933 F.3d 1302, 1309 (Fed. Cir. 2019). "Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics,* 566 F.3d at 1017.

According to MyMail, this case should be dismissed for lack of personal jurisdiction as Plaintiffs

---

Court is already familiar with the defendant and its patents from the ooVoo and IAC Actions. (*See* Dkt. 1, ¶20; IAC Action, Dkt. 169.)

[9] Not surprisingly, *all* of the cases that MyMail cites in support of the "anticipatory suit exception" involve competing actions brought by the parties. (Motion at 8-9).

have not "asserted any facts that would bring MyMail within the long-arm statute of California sufficient to establish minimum contacts such that personal jurisdiction would attach to MyMail [and thus Plaintiffs have] not established personal or territorial jurisdiction of this court over MyMail under FRCP 4(k)(1)." (Motion at 10).[10] MyMail then argues that "[t]he California Corporations Code ('C.Crp.C') § 191 sets forth the scope of the California's long-arm statute" and that "each of the actions alleged by [Plaintiffs] in [their] complaint to assert territorial or personal jurisdiction of this court over MyMail are specifically exempted under C.Crp.C. § 191(c)." (Motion at 10-11). However, MyMail's jurisdictional analysis is flawed as California's long arm statute is found in Cal. Code Civ. Proc. § 410.10 – not California Corporations Code § 191.[11] Moreover, under the correct legal framework, personal jurisdiction exists over MyMail in the Northern District of California.

"California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, and therefore the jurisdictional analysis under state law and federal due process coalesce into a single inquiry." *Fluidigm*, 2019 WL 6612063 at *3 (citing Cal. Civ. Proc. Code § 410.10, which provides that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States"). To establish specific personal jurisdiction consistent with federal due process, courts follow the Supreme Court's three-factor test: "(1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Xilinx, Inc. v. Papst Licensing GmbH & Co. KGG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (internal citations and quotations omitted). "The first two factors correspond with the 'minimum contacts' prong of the *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) analysis, and the third factor corresponds with the 'fair play and justice' prong of the analysis." *Id.*

"With respect to the first factor of the minimum contacts portion of specific personal jurisdiction

---

[10] To the extent MyMail also argues that "the requirements for territorial jurisdiction under Rule 4(k)(2) have net [sic] ben [sic] met either," (Motion at 11), Plaintiffs are not asserting personal jurisdiction under that provision.
[11] California Corporations Code § 191 sets forth what it means for a foreign corporation to "transact interstate business" and has nothing to do with California's long-arm statute. *See Platte River Ins. Co. v. P & E Automation, Inc.*, 2013 WL 12123688 (C.D. Cal. Jun. 19, 2013) ("A party who challenges a corporation's capacity to sue under Cal. Corp. Code § 2105 bears the burden to prove that the action arose out of the corporation's transaction of 'intrastate business.' The statute defines intrastate business as repeated and successive transactions of business in this state other than, other than interstate or foreign commerce." (internal quotations omitting) (citing Cal. Corp. Code § 191(a)).

analysis, 'it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "As to the second factor, also part of the minimum contacts analysis, the court must determine whether 'the suit aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011)). In the context of a declaratory judgment action of non-infringement, "[t]he relevant inquiry for specific personal jurisdiction then becomes to what extent has the defendant patentee purposely directed [such enforcement activities] at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities." *Bayer Healthcare LLC v. Nektar Therapeutics,* 2018 WL 1258202, at *5 (N.D. Cal. Mar. 12, 2018) (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008)).

It is well-settled that "the first two factors of the due process inquiry for specific personal jurisdiction – i.e., the 'minimum contacts' prong – . . . are met based upon [a patentee's] sending of [a] cease-and-desist letter [into the forum state] . . .. [Accordingly,] the proposition that patent enforcement letters cannot provide the basis for jurisdiction without some other activity related to [the] claim connecting [defendant] to the forum beyond the letter in a declaratory judgment action" fails. *Genetic Veterinary Sc.*, 933 F.3d at 1310-12; *see also Xilinx,* 848 F.3d at 1354 ("In the context of declaratory judgment actions involving assertions of patent noninfringement or invalidity, we have concluded that cease-and-desist letters sent by the patentee defendant into the forum are relevant contacts in the personal jurisdiction analysis."); *Jack Henry & Assoc., Inc. v. Plano Encryption Tech., LLC*, 910 F.3d 1199, 1206 (Fed. Cir. 2018) (holding that prior Federal Circuit cases did *not* create a rule that "patent enforcement letters can never provide the basis for jurisdiction in a declaratory judgment action"). In the instant case, MyMail sent the Rakuten Letter to Rakuten Rewards' business address in San Mateo, California. (*Id.* at ¶9; Dkt. 1-5). And, according to Mr. Michaels, the Rakuten Letter and "claim chart[s] serve as notice of infringement" and the claim charts "provide[] a detailed analysis of [the Rakuten Cash Back Button's] infringement of the patent claims." (Dkt. 1-5 at 2, Dkt. 1-6 at 2). In short, MyMail's sending of the Rakuten Letter satisfies the "minimum contacts" factors as it was "clearly directed to" Rakuten Rewards in California, and

Plaintiffs' "claim for declaratory judgment arises out of or relates to" that letter.[12] *See Genetic Veterinary Sci.*, 933 F.3d at 1311.

The third factor of the due process test for personal jurisdiction, i.e., "whether assertion of personal jurisdiction is reasonable and fair," "asks whether the exercise of jurisdiction would be unreasonable under the circumstances." *Daimler AG v. Bauman*, 571 U.S. 117, 144 (2014) (Sotomayor, J., concurring). "Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). "[T]he *Burger King* Court identified five considerations relevant to the reasonableness analysis: . . . (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtain the most efficient resolution of controversies; and (5) the shared interest of several States in furthering fundamental substantive social policies." *Xilinx*, 848 F.3d at 1355 (citing *Burger King*, 471 U.S. at 477) (internal quotations omitted). Here, MyMail has not met its burden of showing that jurisdiction is unreasonable.[13]

First, by agreeing to transfer the ooVoo and IAC Actions to this Judicial District (IAC Action, Dkt. 69) and actively attempting to enforce two of the patents-in-suit before this Court (IAC Action, ooVoo Action), MyMail has shown that it is not burdensome for MyMail to litigate this Action here. *See Xilinx*, 848 F.3d at 1357-58 ("The lack of significant burden on [patentee] is also evidenced by [patentee's] prior litigations in California itself. [Patentee] has repeatedly availed itself of the California federal court system . . . by filing patent infringement lawsuits there."); *see also Viam Corp. v. Iowa Exp.-Imp. Trading Co.,* 84 F.3d 424, 430 (Fed. Cir. 1996) ("[Patentee has] initiated a suit seeking to enforce the same patent that is the subject of this suit against other parties, unrelated to this action, in the same district court in the Central District of California. It appears therefore that [patentee] has found a way to shoulder successfully the burden of litigating in California."). Second, "California has 'definite and well-defined interests in commerce and scientific development,' and 'California has substantial interest in protecting its residents from unwarranted claims of patent infringement.'" *Xilinx*, 848 F.3d at 1356 (citations omitted). Third,

---

[12] In addition to enforcing the patents-in-suit through the Rakuten Letter, MyMail also actively enforced two of the patents-in-suit – the '070 and '863 patents – in this Court in the IAC and ooVoo Actions. (Dkt. 1, ¶¶15-17).
[13] MyMail does not address any of these factors in its Motion. (*See* Motion at 10-12).

| | |
|---|---|
| 1 | Rakuten Rewards, which is headquartered in this Judicial District, "indisputably has an interest in |
| 2 | protecting itself from patent infringement by obtaining relief from a nearby federal court in its home |
| 3 | forum." *Id.* (internal citations and quotations omitted). Fourth, by finding that this Action is related to the |
| 4 | ooVoo Action and IAC Action (IAC Action, Dkt. 169), this Court has, in effect, recognized that |
| 5 | "[j]urisdiction over [Plaintiffs'] declaratory judgment claims in California would . . . result in an efficient |
| 6 | resolution of the controversy." *Xilinx*, 848 F.3d at 1356. Finally, the fifth factor also favors a finding that |
| 7 | personal jurisdiction over MyMail is reasonable, because "'the same body of federal patent law [governs] |
| 8 | irrespective of the forum.'" *Id.* (quoting *Elecs. for Imaging Inc. v. Coyle*, 340 F.3d 1344, 1352 (Fed. Cir. |
| 9 | 2003)). In sum, "there is simply no 'compelling case' here that personal jurisdiction over [MyMail] is |
| 10 | unreasonable." *Id.* at 1358. Accordingly, MyMail's Motion to Dismiss for lack of personal jurisdiction |
| 11 | should be denied. |

## IV. CONCLUSION

For all of the foregoing reasons, MyMail's Motion to Dismiss should be denied.

DATED: August 28, 2020

**GREENBERG TRAURIG, LLP**

By: */s/ Nicholas A. Brown*

Nicholas A. Brown (SBN 198210)
brownn@gtlaw.com
GREENBERG TRAURIG, LLP
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111-5983
Telephone: 415.655.1271
Facsimile: 415.520.5609

Joshua L. Raskin (*pro hac vice*)
RaskinJ@gtlaw.com
Allan A. Kassenoff (*pro hac vice*)
KassenoffA@gtlaw.com
Vimal M. Kapadia (*pro hac vice*)
kapadiav@gtlaw.com
Elana B. Araj (*pro hac vice*)
araje@gtlaw.com
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
Telephone: 212.801.9200
Facsimile: 212.801.6400

*Attorneys for Plaintiffs Ebates Performance Marketing, Inc. d/b/a Rakuten Rewards and Cartera Commerce, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 28, 2020, I electronically filed the foregoing with the Clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Date: August 28, 2020

*/s/ Nicholas A. Brown*
Nicholas A. Brown