1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

| | |
|---|---|
| EBATES PERFORMANCE MARKETING, INC., et al., | Case No. 20-CV-04768-LHK |
| Plaintiffs, | **ORDER DENYING MOTION TO DISMISS** |
| v. | Re: Dkt. Nos. 28, 35, 36 |
| MYMAIL, LTD., | |
| Defendant. | |

12
13
14
15
16
17

Plaintiffs Ebates Performance Marketing, Inc., doing business as Rakuten Rewards

18

("Rakuten Rewards") and Cartera Commerce, Inc. ("Cartera") (collectively, "Plaintiffs") sue

19

Defendant MyMail, Ltd ("Defendant") for a declaration of non-infringement of U.S. Patent Nos.

20

10,228,838 ("the '838 patent"), 9,021,070 ("the '070 patent"), 9,141,263 ("the '263 patent"), and

21

8,275,863 ("the '863 patent"). Before the Court is Defendant's motion to dismiss Plaintiffs'

22

complaint. Having considered the parties' submissions, the relevant law, and the record in this

23

case, the Court DENIES Defendant's motion to dismiss.

24

I.      BACKGROUND

25

This case arises in the context of Defendant's efforts to sue for infringement of its patents,

26

including the '838 patent, the '070 patent, the '263 patent, and the '863 patent. The Court

27
28

Case Nos. 20-CV-04768-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

discusses in turn: (1) the parties; (2) Defendant's previous infringement lawsuits in this district;

(3) prior discussions between the parties in the instant case; and (4) the procedural history of the

instant case.

### A.  The Parties

Plaintiff Rakuten Rewards is a Delaware corporation with its principal place of business in

San Mateo, California. ECF No. 1 ("Compl.") ¶ 3. Rakuten Rewards' parent company is Ebates,

Inc. *Id*. ¶ 9. Rakuten Rewards developed an extension for the Google Chrome browser called

"Rakuten: Get Cash Back for Shopping." *Id.*

Plaintiff Cartera Commerce is a Delaware corporation with its principal place of business

in Lexington, Massachusetts. *Id*. ¶ 4. Cartera developed and operates a SkyMiles Shopping

Button. *Id*. ¶¶ 10, 11. Cartera licenses the product to Delta Airlines ("Delta"), as well as other

Cartera partners, including American Airlines, Alaska Airlines, Southwest, United, and USAA. *Id.*

¶¶ 11, 13.

Defendant MyMail is a Texas partnership with its principal place of business in Athens,

Texas. *Id*. ¶ 5. Defendant is the assignee of the '838 patent, the '070 patent, the '263 patent, and

the '863 patent. *Id*. ¶ 6.

### B.  Prior Litigation Involving the Defendant

This Court previously adjudicated two cases brought by Defendant ("the ooVoo cases")

claiming that the '863 patent and the '070 patent, two of the patents at issue in the instant case,

had been infringed. *See MyMail, Ltd. v. OoVoo, LLC*, --- F. Supp. 3d ---, 2020 WL 2219036, at *1

(N.D. Cal. May 7, 2020).

On November 18, 2016, Defendant filed a complaint for infringement of the '863 patent

and the '070 patent in the Eastern District of Texas against ooVoo, a Delaware corporation with its

primary place of business in New York, New York. *Id*. at *1–2. On December 20, 2016,

Defendant filed a similar complaint in the Eastern District of Texas against IAC, a Delaware

corporation with its primary place of business in Oakland, California. *Id*. at *2.

On February 2, 2017, ooVoo moved to dismiss Defendant's action for improper venue. *Id*

United States District Court
Northern District of California

On February 3, 2017, Defendant opposed ooVoo's motion to dismiss for improper venue. *Id.* Similarly, on February 13, 2017, IAC moved to dismiss Defendant's action for improper venue. *Id.* That same day, Defendant opposed IAC's motion to dismiss for improper venue. *Id.* On July 11, 2017, the United States District Court for the Eastern District of Texas transferred both of Defendant's cases to this district. *Id.*

On October 31, 2017, OoVoo and IAC filed motions for judgment on the pleadings that sought to invalidate the '863 patent and the '070 patent under 35 U.S.C. § 101. *Id.* On March 16, 2018, the Court granted the motion for judgment on the pleadings and invalidated the '863 patent and the '070 patent under 35 U.S.C. § 101. *Id.* On August 16, 2019, a divided panel of the Federal Circuit Court of Appeals vacated and remanded the Court's order granting the motion for judgment on the pleadings because the Court did not construe the term "toolbar." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1380 (Fed. Cir. 2019).

On October 1, 2019, OoVoo and IAC filed renewed motions for judgment on the pleadings that again sought to invalidate the '863 patent and the '070 patent under 35 U.S.C. § 101. *ooVoo*, 2020 WL 2219036, at *2. However, the parties later agreed that the Court should first construe the term "toolbar." *Id.* at *3. The Court thus denied the renewed motions for judgment on the pleadings without prejudice. *Id.* The Court then construed the term "toolbar" after claim construction briefing. *Id.*

On March 26, 2020, OoVoo and IAC filed renewed motions for judgment on the pleadings that again sought to invalidate the '863 patent and the '070 patent under 35 U.S.C. § 101. *Id.* On May 7, 2020, the Court granted the motion for judgment on the pleadings and invalidated the '863 patent and the '070 patent under 35 U.S.C. § 101. *Id.* at *22. On May 22, 2020, Defendant appealed the Court's decision to the Federal Circuit. The Federal Circuit has not ruled on the appeal yet.

**C.  Discussions Between the Parties**

On June 12, 2020, Mr. Christopher Michaels, an attorney representing Defendant, sent a letter to Ebates, Inc. d/b/a Rakuten, along with printouts of portions of the source code of the

Case Nos. 20-CV-04768-LHK
ORDER DENYING MOTION TO DISMISS

Rakuten Rewards extension, a 22-page claim chart, and a proposed license agreement. Compl. ¶ 9; ECF No. 1-5 at 2–4. The letter stated that "[w]e have reviewed your Chrome extension called 'Rakuten: Get Cash Back for Shopping'" and "have downloaded the relevant manifest.json file and JavaScript files." ECF No. 1-5 at 2 (emphasis omitted). The letter then stated that "[t]his letter, source code print out, and claim chart serve as notice of infringement" of the '838 patent, the '070 patent, the '263 patent, and the '863 patent. *Id*. The letter further stated that Defendant was offering a "license agreement in the form attached to this letter." *Id*.

The letter explained that Defendant's attorneys had "been engaged to evaluate potential infringement claims and make an initial attempt to resolve infringement claims before they are referred to the litigation team." *Id*. The letter stated that "[Defendant] has been involved in a lot of litigation and has litigators actively enforcing its patents, but it will not be this law firm that initiates any litigation against your company." *Id*. The letter then said that Defendant and its attorneys were "certainly aware of the expense and risk of litigation" and "encourage[d] [Rakuten Rewards] to seek the advice of an experienced patent attorney." *Id*. at 3–4. The letter further claimed that Defendant's "portfolio of patents has been litigated dozens of times against some of the largest corporations in the world," "[p]atents from the portfolio have survived four inter partes review proceedings, 34 district court litigations, and two appeals to the Federal Circuit Court of Appeals," and "[q]uite literally hundreds of patent attorneys have represented dozens of defendants and were unable to invalidate the patents over the years." *Id*. at 4. The letter ended by stating that, if a response was not received by June 24, 2020 "[t]he offer to license described above will terminate", and Mr. Michaels would "turn [his] files over to litigation counsel." *Id*. at 4.

On the same day that Mr. Michaels sent a letter to Ebates, he also sent a very similar letter to Delta Airlines by delivering the letter to Cartera. Compl. ¶ 10; ECF No. 1-6. The letter was accompanied by a license agreement, a 23-page claim chart, and a print out of portions of the source code for the SkyMiles Shopping Button. ECF No. 1-6. Like the letter to Ebates, the letter to Delta alleged that "[w]e have reviewed your Chrome extension called [SkyMiles Shopping Button] . . . and have downloaded the relevant manifest.json file and JavaScript files." *Id*. at 2. The

Case Nos. 20-CV-04768-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

letter stated that "[t]his letter, source code print out, and claim chart serve as notice of infringement" of the '838 patent, the '070 patent, the '263 patent, and the '863 patent. *Id*. at 2. The letter also offered a "license agreement in the form attached to this letter." *Id*.

The letter explained that Defendant's attorneys had "been engaged to evaluate potential infringement claims and make an initial attempt to resolve infringement claims before they are referred to the litigation team." *Id*. The letter stated that "[Defendant] has been involved in a lot of litigation and has litigators actively enforcing its patents, but it will not be this law firm that initiates any litigation against your company." *Id*. The letter then stated that Defendant and its attorneys were "certainly aware of the expense and risk of litigation" and "encourage[d] [Delta] to seek the advice of an experienced patent attorney." *Id*. at 3–4. The letter explained that Defendant's "portfolio of patents has been litigated dozens of times against some of the largest corporations in the world," "[p]atents from the portfolio have survived four inter partes review proceedings, 34 district court litigations, and two appeals to the Federal Circuit Court of Appeals," and "[q]uite literally hundreds of patent attorneys have represented dozens of defendants and were unable to invalidate the patents over the years." *Id*. at 4. The letter concluded by stating that, if a response was not received by June 24, 2020, "[t]he offer to license described above will terminate" and Mr. Michaels would "turn [his] files over to litigation counsel." *Id*. at 4.

On July 2, 2020, Mr. Raskin, counsel for Plaintiffs, sent a response on behalf of Ebates and Cartera. Compl. ¶ 27; ECF No. 1-7. The response stated that, "before deciding whether and to what extent they will engage in licensing discussions with [Defendant], [Plaintiffs] request[] that you address the issues raised below." ECF No. 1-7 at 2. One issue was the fact that "claims 1–5, 9–13, 16–17, 19–20, and 23 of the '863 patent and 1–13 and 15–22 of the '070 patent have been invalidated by the Northern District of California," and therefore "[Defendant] is collaterally estopped from asserting any infringement allegations based on those claims." *Id*. at 2–3. The letter then stated that "[t]he remaining asserted claims . . . are insubstantially different from the claims that were found invalid in the Oovoo decision, and thus are also invalid." *Id*. at 3. The letter further stated that neither Rakuten Rewards nor Cartera infringed the '838 patent, the '070 patent,

Case Nos. 20-CV-04768-LHK
ORDER DENYING MOTION TO DISMISS

1    the '263 patent, and the '863 patent. *Id*. at 4. The letter concluded by stating that, "before

2    commencing any licensing discussions, please let us know your thoughts on the above issues." *Id*.

3    at 5. Defendant never responded to Plaintiffs' issues.

4        **D.  Procedural History**

5        On July 16, 2020, three weeks after the date Defendant had stated that it would turn its

6    files over to litigation counsel, Plaintiffs sued Defendant for a declaration of non-infringement of

7    the the '838 patent, the '070 patent, the '263 patent, and the '863 patent. Compl. On July 30, 2020,

8    the Court concluded that this case was related to the ooVoo cases pursuant to Civil Local Rule 3-

9    12(a). ECF No. 26. The instant case was subsequently reassigned to this Court.

10        On August 14, 2020, Defendant filed a motion to dismiss the instant case. ECF No. 28

11   ("Mot.").[1] On August 28, 2020, Plaintiffs filed an opposition. ECF No. 32 ("Opp'n"). On

12   September 11, 2020, Defendant filed a reply. ECF No. 34 ("Reply").

13        On September 14, 2020, Plaintiffs filed a motion to strike Defendant's reply on the

14   grounds that it was untimely. ECF No. 35. On September 15, 2020, Defendant filed a motion for

15   an extension of time to file the reply. ECF No. 36. In that motion, Defendant's counsel explained

16   that he had missed the deadline because he became seriously ill on August 28, 2020. *Id*. at 2;

17   Gibbons Decl. ¶ 4. On September 29, 2020, Plaintiffs filed a statement of non-opposition to

18   Defendant's motion for extension of time. ECF No. 39.

19        The Court can extend time after the time has expired "for good cause . . . if the party failed

20   to act because of excusable neglect." F. R. Civ. P. 6(b)(1)(B). In  considering whether excusable

21   neglect exists, the Court should consider: (1) the danger of prejudice to the non-moving party; (2)

22   the length of the delay and the delay's potential impact on judicial proceedings; (3) whether the

23   delay was within the reasonable control of the movant; and (4) whether the movant acted in good

24   faith. *Pioneer Inv. Servs. v. Brunswick Associates*, 507 U.S. 380, 395 (1992).

25   _____

26   [1] Defendant's motion to dismiss contains a notice of motion that is separate from the
     memorandum of points and authorities in support of the motion. ECF No. 28-1. Civil Local Rule
27   7-2(b) provides that the notice of motion and points and authorities should be contained in one
     document with the same pagination.

28
     Case Nos. 20-CV-04768-LHK
     ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Weighing these factors, the Court concludes that an extension is warranted. First, in their motion to strike, Plaintiffs did not articulate any reasons they were prejudiced by Defendant's late filing. *See* ECF No. 35. Plaintiffs later filed a statement of non-opposition to Defendant's motion for an extension of time. ECF No. 39. Second, the delay lasted for seven days and did not affect other proceedings in the case. Third, the delay was subject to counsel's control, but counsel stated that he was suffering from a serious illness. *See* ECF No. 36 at 2; Gibbons Decl. ¶ 4. Finally, the facts before the Court do not suggest that Defendant was acting in bad faith. Accordingly, the Court DENIES Plaintiffs' motion to strike and GRANTS Defendant's motion for an extension of time to file the reply.

## II.   LEGAL STANDARD

### A.  Motion to Dismiss Under Rule 12(b)(1)

A defendant may move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Although lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* The Court

7

Case Nos. 20-CV-04768-LHK
ORDER DENYING MOTION TO DISMISS

1  "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. *Id.*

2      Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule

3  12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction. *See Chandler v.*

4  *State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

5      **B.  Motion to Dismiss Under Rule 12(b)(2)**

6      In a motion challenging personal jurisdiction under Federal Rule of Civil Procedure

7  12(b)(2), the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the

8  burden of establishing that jurisdiction exists. *See In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th

9  Cir. 2019). "Where, as here, the defendant's motion is based on written materials rather than an

10  evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to

11  withstand the motion to dismiss.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015)

12  (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)).

13      However, this standard "is not toothless," and the party asserting jurisdiction "cannot

14  simply rest on the bare allegations of its complaint." *In re Boon Global Ltd.*, 923 F.3d at 650

15  (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). Thus,

16  courts may consider declarations and other evidence outside the pleadings to determine whether it

17  has personal jurisdiction. *See id.* At this stage of the proceeding, "uncontroverted allegations in

18  plaintiff's complaint must be taken as true, and '[c]onflicts between parties over statements

19  contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger*,

20  374 F.3d at 800). On the other hand, courts "may not assume the truth of allegations in a pleading

21  which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218,

22  1223 (9th Cir. 2011).

23      **C.  Leave to Amend**

24      If the Court determines that a complaint should be dismissed, it must then decide whether

25  to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

26  "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

27  15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v.*

28

Case Nos. 20-CV-04768-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

*Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.    DISCUSSION

Defendant moves to dismiss the instant case for two reasons: (1) this Court lacks subject matter jurisdiction over Plaintiffs' claim for a declaration of non-infringement; and (2) this Court lacks personal jurisdiction over Defendant. The Court addresses each argument in turn.

### A.   Subject Matter Jurisdiction

Defendant first argues that this Court lacks subject matter jurisdiction over Plaintiffs' claims for a declaratory judgment of non-infringement. Mot. at 7–9. Generally, dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "is a procedural question not unique to patent law," and is therefore governed by regional circuit law. *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1380 (Fed. Cir. 2002). However, "[w]hether an actual case or controversy exists so that a district court may entertain an action for declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." *3M Co v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012).

The Declaratory Judgment Act states that, "[i]n the case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party in seeking such declaration." 28 U.S.C. § 2201(a). The phrase "actual controversy" refers to "cases" and "controversies" that are justiciable under Article III of the Constitution. *Assoc. for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012), *rev'd in part on other grounds by Assoc.*

9

*for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013). Thus, without a case or controversy, there cannot be a claim for declaratory relief. *ActiveVideo Networks*, 975 F. Supp. at 1086.

The Court has subject matter jurisdiction in a declaratory judgment action when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Under the "all the circumstances" test, courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* at 136.

In case law following *MedImmune*, the Federal Circuit has explained that, in the context of patent disputes, an actual controversy requires "an injury in fact traceable to the patentee," which requires "both (1) an affirmative act by the patentee related to the enforcement of his patent rights and (2) meaningful preparation to conduct potentially infringing activity." *Assoc. for Molecular Pathology*, 689 F.3d at 1318. In the instant case, the parties do not dispute the second factor because Plaintiffs market the products and services at issue. *See* Compl. ¶¶ 9, 10 (stating that Rakuten Rewards owns the "Rakuten: Get Cash Back For Shopping" extension and Cartera owns the SkyMiles Shopping Button extension).

In order to meet the affirmative act requirement, "more is required than 'a communication from a patent owner to another party, merely identifying its patent and the other's product line.' [But] [h]ow much more is required is determined on a case-by-case analysis." *3M*, 673 F.3d at 1378–79. In *Cepheid v. Roche Molecular Systems, Inc.*, another Court in this District listed factors that the Federal Circuit and Supreme Court have generally considered in determining whether the patentee has taken an affirmative act: (1) the strength of threatening language in communications between the parties; (2) the depth and extent of infringement analysis conducted by the patent holder; (3) whether the patent holder imposed a deadline to respond; (4) any prior litigation between the parties; (5) the patent holder's history of enforcing the patent at issue; (6) whether the patent holder's threats have induced the alleged infringer to change its behavior; (7) the number of

10

1   times the patent holder has contacted the alleged infringer; (8) whether the patent holder is a

2   holding company with no income other than enforcing patent rights; (9) whether the patent holder

3   refused to give assurance it will not enforce the patent; (10) whether the patent holder has

4   identified a specific patent and specific infringing products; (11) the extent of the patent holder's

5   familiarity with the product prior to suit; (12) the length of time that transpired after the patent

6   holder asserted infringement; and (13) whether communications initiated by the plaintiff appear as

7   an attempt to create a controversy. *ActiveVideo*, 975 F. Supp. 2d at 1087–88 (citing *Cepheid v.*

8   *Roche Molecular Systems, Inc.*, Case No C-12-4411 EMC, 2013 WL 184125, at *6 (N.D. Cal. Jan.

9   17, 2013)).

10          In the instant case, several of the factors identified in *Cepheid* demonstrate that subject

11   matter jurisdiction exists. First, the communications between the parties included threatening

12   language. Mr. Michaels, an attorney for Defendant, stated in his June 12, 2020 letters that: (1)

13   Defendant and its attorneys had reviewed Plaintiffs' products, and (2) the letters, source code print

14   outs, and claim charts "serve as notice of infringement" of the '838 patent, the '070 patent, the

15   '263 patent, and the '863 patent. ECF No. 1-5 at 2; ECF No. 1-6 at 2. The letter then made

16   multiple references to Defendant's past litigation. ECF No. 1-5 at 3–4; ECF No. 1-6 at 3–4.

17   Specifically, the letter claimed that Defendant's "portfolio of patents has been litigated dozens of

18   times against some of the largest corporations in the world," "[p]atents from the portfolio have

19   survived four inter partes review proceedings, 34 district court litigations, and two appeals to the

20   Federal Circuit Court of Appeals," and "[q]uite literally hundreds of patent attorneys have

21   represented dozens of defendants and were unable to invalidate the patents over the years." ECF

22   No. 1-5 at 4; ECF No. 1-6 at 4. The letter explained that "[Defendant] has been involved in a lot of

23   litigation and has litigators actively enforcing its patents." ECF No. 1-5 at 3; ECF No. 1-6 at 3.

24   The letter also stated that Defendant and its attorneys were "certainly aware of the expense and

25   risk of litigation." ECF No. 1-5 at 4; ECF No. 1-6 at 4. The letter concluded by explicitly stating

26   that, if a response was not received by June 24, 2020, Mr. Michaels would "turn [his] files over to

27   litigation counsel." *Id.* at 4.

28

Case Nos. 20-CV-04768-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Second, Defendant engaged in infringement analysis. Mr. Michaels' letters stated that "[w]e have reviewed" Plaintiffs' products and "have downloaded the relevant manifest.json file and JavaScript files." ECF No. 1-5 at 2; ECF No. 1-6 at 2. Each of the letters were accompanied by a print out of portions of the source code for Plaintiffs' products and a claims chart. ECF No. 1-5; ECF No. 1-6. Indeed, the claims chart attached to the Rakuten Rewards letter was 22 pages, and the claims chart attached to the Cartera letter was 23 pages. *Id.* These facts demonstrate that Defendant had analyzed Plaintiffs' products and concluded that they infringed Defendant's patents. ECF No. 1-5 at 2 (letter stating that Rakuten Rewards' product infringed Defendant's patents); ECF No. 1-6 at 2 (letter stating that Delta's product infringed Defendant's patents).

Third, Defendant imposed a deadline to respond. ECF No. 1-5 at 4; ECF No. 1-6 at 4. Specifically, Defendant set a response deadline of June 24, 2020, just 12 days after the date of the letters. *Id.* The letters stated that if Plaintiffs missed that deadline, Defendant's attorney would turn his files over to litigation counsel. *Id.*

Fourth, Defendant has a history of enforcing the patents at issue in this case. Defendant already prosecuted an action in this Court for infringement of two of the patents involved in this case. *See ooVoo*, 2020 WL 2219036, at *1. Furthermore, as Defendant's letters state, Defendant has been involved in extensive litigation of its patent portfolio, including 34 district court litigations. ECF No. 1-5 at 4; ECF No. 1-6 at 4.

Fifth, Defendant refused to give assurance that it would not enforce the patents at issue in this case. To the contrary, Defendant threatened to enforce the patents by stating that, if Plaintiffs did not respond by the June 24, 2020 deadline, Defendant's attorney would turn his files over to litigation counsel. *Id.*

Sixth, Defendant identified specific patents and specific infringing products in the June 12, 2020 letters. In its letters, Defendant stated that Defendant and its attorneys had reviewed the Rakuten: Get Cash Back for Shopping Chrome extension and the SkyMiles Shopping Button. ECF No. 1-5 at 2; ECF No. 1-6 at 2. Defendant claimed that these products infringed the '838 patent, the '070 patent, the '263 patent, and the '863 patent. *Id.*

1

2

3

4

5

Finally, Defendant appears to be familiar with Plaintiffs' products. Indeed, Defendant printed out portions of the source code of Plaintiffs' products and sent claims charts analyzing Plaintiffs' products. ECF No. 1-5; ECF No. 1-6. The claims chart attached to the Rakuten Rewards letter was 22 pages, and the claims chart attached to the Cartera letter was 23 pages. *Id.* These facts demonstrate that Defendant is familiar with Plaintiffs' products.

6

7

8

9

10

11

12

13

14

Analyzing "all the circumstances," the Court thus concludes that Defendant engaged in an affirmative act sufficient to confer jurisdiction over Plaintiff's declaratory judgment claims. *MedImmune, Inc.*, 549 U.S. at 127. Indeed, an attorney for Defendant sent letters to Plaintiffs alleging that Plaintiffs' products infringed Defendants' patents, supported those allegations with print outs of the products' source code and claims charts exceeding 20 pages each, and threatened to turn files over to litigation counsel if Plaintiffs did not respond within a period of less than two weeks. Viewing these letters in the context of Defendant's extensive history of infringement litigation, which involves at least thirty-four district court litigations, the Court concludes that Defendant engaged in an affirmative act, and Plaintiffs were thus entitled to sue Defendant.

15

16

17

18

19

20

21

22

23

24

25

Defendant argues that the Court should decline declaratory judgment jurisdiction because the instant case was filed while the parties were in licensing negotiations. Mot. at 8. However, the parties were not in licensing negotiations. Plaintiffs' July 2, 2020 letter to Defendant's attorney stated at the outset that "before deciding whether and to what extent they will engage in licensing discussions with [Defendant], [Plaintiffs] request[] that you address the issues raised below." ECF No. 1-7 at 2. The letter then raised several issues, including this Court's previous decision concluding that the '863 patent and the '070 patent were invalid under 35 U.S.C. § 101. Id. at 2–3. The letter concluded by stating that, "before commencing any licensing discussions, please let us know your thoughts on the above issues." *Id.* at 5. Defendant never responded to Plaintiffs' issues. Plaintiff filed the instant case on July 16, 2020. *See* Compl. Accordingly, the parties were not engaged in licensing discussions when the instant case was filed.

26

27

Defendant further argues that the Court should dismiss the instant case because it was an anticipatory suit. Mot. at 9. However, whether a suit is anticipatory is a consideration that courts

28

Case Nos. 20-CV-04768-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1    take into account when multiple cases involving the same claims have been filed in different

2    jurisdictions. *See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005). That

3    issue is inapplicable here because there are not multiple cases involving the same claims. Indeed,

4    Defendant has not filed a lawsuit against Plaintiffs. Accordingly, the Court concludes that it has

5    subject matter jurisdiction over Plaintiffs' declaratory judgment claims.

6    **B. Personal Jurisdiction**

7        Defendant next argues that this Court lacks personal jurisdiction over it. Mot. at 10–13.

8    The Court applies Federal Circuit law to the question of whether the Court has personal

9    jurisdiction over Plaintiffs' claims of non-infringement because "the jurisdictional issue is

10   'intimately involved with the substance of the patent laws.'" *Avocent Huntsville Corp. v. Aten Int'l*

11   *Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed.

12   Cir. 1995)). "Determining whether personal jurisdiction exists over an out-of-state defendant

13   involves two inquiries: whether a forum state's long-arm statute permits service of process, and

14   whether the assertion of personal jurisdiction would violate due process." *Avocent*, 552 F.3d at

15   1329 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001)).

16       California's long arm statute, Cal. Civ. Proc. Code § 410.10,[2] is co-extensive with federal

17   due process requirements, and therefore the jurisdictional analyses under California law and

18   federal due process merge into one. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state

19   may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the

20   United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)

21   ("California's long-arm statute . . . is coextensive with federal due process requirements, so the

22   jurisdictional analyses under state law and federal due process are the same.").

23

24   ――――――――――

25   [2] In its motion, Defendant stated that "[t]he California Corporations Code . . . § 191 sets forth the scope of California's long-arm statute over foreign businesses." Mot. at 10. However, for purposes of determining whether the Court has personal jurisdiction over an out-of-state defendant, the Court must use California's long arm statute, Cal. Civ. Proc. Code § 410.10. *See Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (determining personal jurisdiction existed in this district over an out-of-state defendant by looking at Cal. Civ. Proc. Code § 410.10).

26

27

28

Case Nos. 20-CV-04768-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1

2

3

4

5

For a court to exercise personal jurisdiction over a defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

6

7

8

9

10

11

12

A court may exercise either general or specific jurisdiction over a defendant. *Avocent.*, 552 F.3d at 1330. "To be subject to general jurisdiction, a defendant business entity must maintain 'continuous and systematic general business contacts' with the forum, even when the cause of action has no relation to those contacts." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009) (quotation omitted). In the instant case, Plaintiffs do not argue that Defendant is subject to general jurisdiction in this forum. Accordingly, the Court considers whether the Court has specific jurisdiction over Defendant.

13

14

15

16

17

18

19

20

21

22

23

Specific jurisdiction is appropriate when a suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). To determine whether a court can exercise specific jurisdiction consistent with due process, the Federal Circuit considers: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Xilinx*, 848 F.3d at 1353 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)). "The first two factors correspond with the minimum contacts prong of the [International Shoe] analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Inamed*, 249 F.3d at 1360. The Court initially considers the first two factors. The Court then considers the third factor.

24

25

**1. Whether the Defendant Purposefully Directed Its Activities at Residents of the Forum, and Whether the Claim Arises Out of or Relates to Those Activities**

26

27

The first two factors require the Court to determine whether the defendant purposefully directed its activities at residents of the forum, and whether the claim arises out of or relates to

28

Case Nos. 20-CV-04768-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1  those activities. *Xilinx*, 848 F.3d at 1353. With respect to the first factor, "it is essential in each

2  case that there be some act by which the defendant purposefully avails itself of the privilege of

3  conducting activities within the forum State, thus invoking the benefits and protections of its

4  laws." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). As to the second factor, "the

5  court must determine whether 'the suit aris[es] out of or relate[s] to the defendant's contacts with

6  the forum.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–

7  24 (2011)).

8       The plaintiff has the burden of establishing these two factors. *Elecs. for Imaging v. Coyle*,

9  340 F.3d 1344, 1350 (Fed. Cir. 2003). "Without discovery and a record on jurisdiction, [the Court]

10  must resolve all factual disputes in the plaintiff's favor." *Nuance Comms., Inc. v. Abbyy Software*

11  *House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). "[W]here the plaintiff's factual allegations are not

12  directly controverted, [they] are taken as true for purposes of determining jurisdiction." *Id.*

13  (quoting *Akro*, 45 F.3d at 1543). "To survive a motion to dismiss in the absence of jurisdictional

14  discovery, plaintiffs need only make a prima facie showing of jurisdiction." *Id.*

15       When the plaintiff is bringing a declaratory judgment for non-infringement, the claim

16  "arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents

17  in suit." *Avocent*, 552 F.3d at 1332. "The relevant inquiry for specific personal jurisdiction then

18  becomes to what extent has the defendant patentee 'purposefully directed [such enforcement

19  activities] at residents of the forum,' and the extent to which the declaratory judgment claim

20  'arises out of or relates to those activities.'" *Id.* (quoting *Breckenridge Pharm., Inc. v. Metabolite*

21  *Labs*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)). "A declaratory judgment claim arises out of the

22  patentee's contacts with the forum state only if those contacts 'relate in some material way to the

23  enforcement or the defense of the patent.'" *Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d

24  1134, 1138 (Fed. Cir. 2018) (quoting *Avocent*, 552 F.3d at 1336).

25       Under Federal Circuit law, "ordinary cease-and-desist notices sent by a patentee to an

26  alleged infringing party in a different state are not sufficient to subject the patentee to specific

27  jurisdiction in that state." *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011).

28

Case Nos. 20-CV-04768-LHK
ORDER DENYING MOTION TO DISMISS

1    "The crux of the due process inquiry should focus first on whether the defendant has had contact

2    with parties in the forum state beyond the sending of cease and desist letters." *Breckenridge*, 444

3    F.3d at 1366. Indeed, "certain other patent enforcement actions, taken in conjunction with the

4    issuance of cease-and-desist letters, are sufficient to support specific jurisdiction." *Radio Sys.*

5    *Corp.*, 638 F.3d at 789. "Examples of these 'other activities' include initiating judicial or

6    extrajudicial patent enforcement within the forum, or entering into an exclusive license agreement

7    or other undertaking which imposes enforcement obligations with a party residing or regularly

8    doing business in the forum." *Avocent*, 552 F.3d at 1334. These activities need not be directed

9    towards parties in the lawsuit. *Id.*

10       In the instant case, the Court concludes that Defendant has purposefully directed its

11   enforcement activities towards the forum state by: (1) litigating the ooVoo cases, which included

12   two lawsuits based on claims of infringement of two of the patents at issue in the instant case, in

13   the Northern District of California; (2) never contesting personal jurisdiction in the Northern

14   District of California in the ooVoo cases; and (3) sending a letter to Rakuten Rewards, which has

15   its headquarters in this district.

16       First, the fact that a defendant "has engaged in judicial patent enforcement (with respect to

17   the patents at issue or a related patent)" in the same district can support personal jurisdiction.

18   *ActiveVideo Networks, Inc. v. TransVideo Elecs.*, *Ltd.*, 975 F. Supp. 2d 1083, 1097–98 (N.D. Cal.

19   2013); *see also Avocent*, 552 F.3d at 1338–39 (noting that a lawsuit in the same forum on the same

20   patent "is a significant contact with the forum materially related to the enforcement of the relevant

21   patent").

22       For example, this Court recently found that a defendant had purposefully directed its

23   enforcement activities towards the forum state by litigating six prior lawsuits in the Northern

24   District of California for infringement of related patents. *See Twitter, Inc. v. VoIP-Pal.Com, Inc.*,

25   Case No. 20-CV-02397-LHK, 2020 WL 7342733, at *10 (N.D. Cal. Dec. 14, 2020); *Apple, Inc. v.*

26   *VoIP-Pal.Com, Inc.*, Case No. 20-CV-02460-LHK, 2020 WL 7319352, at *10 (N.D. Cal. Dec. 11,

27   2020). Similarly, another court in this district found that a defendant had purposefully directed its

28

Case Nos. 20-CV-04768-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1    activities to the forum by litigating six cases in this district "regarding the very same or related

2    patents." *Id.* at 1096–97. Furthermore, the District of New Jersey found that a defendant had

3    purposefully directed its activities to the forum by suing other defendants in that district for patent

4    infringement. *Pro Sports Inc. v. West*, 639 F. Supp. 2d 475, 481 (D.N.J. 2009). In addition, the

5    District of Maryland concluded that personal jurisdiction existed when a defendant had filed "a

6    prior suit against [the plaintiff in the district] with respect to related patents." *Neuralstem, Inc. v.*

7    *StemCells, Inc.*, 573 F. Supp. 2d 888, 898 (D. Md. 2008).

8        Accordingly, Defendant's act of litigating the ooVoo cases, which alleged infringement of

9    two of the patents at issue in this case, in this district demonstrates that Defendant has

10   purposefully directed its enforcement activities towards the forum state. Defendant opposed

11   ooVoo and IAC's motions to dismiss for improper venue in the Eastern District of Texas before

12   the ooVoo cases were transferred to this district. *ooVoo*, 2020 WL 2219036, at *2. However,

13   Defendant then litigated the ooVoo cases in this district without contesting personal jurisdiction.

14       By continuing to prosecute its lawsuits in this district, Defendant purposefully availed

15   itself of the courts in California. In *Kyocera Communications v. Potter Voice Technologies*, the

16   district court relied on this same reasoning. Case No. 13-CV-0766-H, 2013 WL 2456032, at *3

17   (S.D. Cal. June 5, 2013). In that case, the defendant had initially brought suit in Colorado and

18   opposed transfer to California. *Id.* The district court nonetheless concluded that the defendant had

19   purposefully availed itself of the California courts because the defendant had continued

20   prosecuting the lawsuit in California. *Id.* Accordingly, the Court concludes that Defendant's prior

21   infringement litigation, which involved two of the same patents at issue here, demonstrates that

22   Defendant purposefully directed its enforcement activities towards this district.

23       In addition to Defendant's previous litigation in this district, Defendant also sent a letter

24   addressed to "Ebates, Inc. d/ b / a Rakuten" at Rakuten Rewards' headquarters, which are located

25   in this district. ECF No. 1-5 at 2. This letter was aimed at enforcing Defendant's patents. The letter

26   claimed Rakuten Rewards' product infringed Defendant's patents, provided a licensing offer, and

27   stated that if Rakuten Rewards did not respond within twelve days, the files would be turned over

28

United States District Court
Northern District of California

18

Case Nos. 20-CV-04768-LHK
ORDER DENYING MOTION TO DISMISS

1    to litigation counsel. *Id.* at 2, 4.

2            Although the Federal Circuit has stated that "ordinary cease-and-desist notices sent by a

3    patentee to an alleged infringing party in a different state are not sufficient to subject the patentee

4    to specific jurisdiction in that state," the Federal Circuit has acknowledged that "certain other

5    patent enforcement actions, taken in conjunction with the issuance of cease-and-desist letters, are

6    sufficient to support specific jurisdiction." *Radio Sys. Corp.*, 638 F.3d at 789; *see also Xilinx*, 848

7    F.3d at 1354 (concluding that personal jurisdiction existed because of the defendant's visit to the

8    forum and "cease-and-desist letters sent by the patentee defendant into the forum[, which] are

9    relevant contacts in the personal jurisdiction analysis"). Thus, the Court concludes that the letter

10   Defendant sent to Rakuten Rewards, combined with Defendant's history of past litigation in this

11   district, are sufficient to show that Defendant purposefully directed its enforcement activities at

12   residents of the forum.

13          Finally, the claim at issue in the instant case arises out of or relates to these activities

14   because Defendant's prior infringement cases were aimed at enforcing two patents that are at issue

15   in this case. *Avocent*, 552 F.3d at 1330. In addition, Defendants' letter to Rakuten Rewards is

16   aimed at enforcing all four of the patents at issue in this case. *See* ECF No. 1-5 at 2 (stating that

17   "[t]his letter, source code print out, and claim chart serve as notice of infringement" of the '838

18   patent, the '070 patent, the '263 patent, and the '863 patent). Accordingly, the Court concludes

19   that Plaintiff has made a prima facie showing on the first two factors, as required for specific

20   jurisdiction.

21          **2.  Whether Assertion of Personal Jurisdiction is Reasonable and Fair**

22          The Court next considers whether the assertion of personal jurisdiction is reasonable and

23   fair. The reasonableness inquiry "is not limited to the specific facts giving rise to, or relating to,

24   the particular litigation." *Xilinx*, 848 F.3d at 1355. For the reasonableness inquiry, the burden is on

25   the defendant, who must "present a compelling case that the presence of some other considerations

26   would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court

27   in *Burger King* [*Corporation v. Rudewicz*, 471 U.S. 462, 475–77 (1985)]." *Breckenridge*, 444 F.3d

28

Case Nos. 20-CV-04768-LHK
ORDER DENYING MOTION TO DISMISS

*United States District Court*
*Northern District of California*

1   1356, 1363 (Fed. Cir. 2006). The five factors outlined in *Burger King* include: (1) the burden on

2   the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest

3   in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining

4   the most efficient resolution of controversies; and (5) the shared interest of the several States in

5   furthering fundamental substantive social policies. *Avocent*, 552 F.3d at 1331 (citing *Burger King*,

6   471 U.S. at 475–77). The Court addresses each factor in turn.

7         First, litigating in this district would not be unduly burdensome for Defendant. The Federal

8   Circuit has repeatedly concluded that a defendant's previous lawsuits in a forum demonstrates that

9   the defendant would not face an undue burden in litigating there. *See Xilinx*, 848 F.3d at 1357–58

10  (explaining that "[t]he lack of significant burden on [the defendant] is also evidenced by [the

11  defendant's] prior litigations in California itself," including seven patent infringement lawsuits

12  there); *Acorda Therapeutics Inc. v. Mylan Pharma. Inc*, 817 F.3d 755, 764 (Fed. Cir. 2016)

13  (concluding that the burden on defendant "will be at most modest, as [the defendant] . . . has

14  litigated many . . . lawsuits" in the forum); *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d

15  424, (Fed. Cir. 1996) (concluding that litigation in California was not unduly burdensome because

16  the defendant had filed previous lawsuits in California). In the instant case, Defendant has

17  prosecuted in this district two lawsuits alleging infringement of two of the patents in the instant

18  case. Thus, the Court concludes that litigating the instant case would not be unduly burdensome.

19        As to the second factor, "California has a substantial interest in protecting its residents

20  from unwarranted claims of patent infringement." *Elecs. for Imaging*, 340 F.3d at 1352. One

21  plaintiff in the instant case, Rakuten Rewards, has its principal place of business in this district.

22  Compl. ¶ 3. Thus, the second factor weighs in favor of personal jurisdiction.

23        On the third factor, Plaintiffs also have "an undisputed interest in protecting [themselves]

24  from patent infringement." *Id*. Rakuten Rewards, which has its principal place of business in this

25  district, "indisputably has an interest in protecting itself from patent infringement by obtaining

26  relief 'from a nearby federal court' in its home forum." *Xilinx*, 848 F.3d at 1356. Thus, the third

27  factor weighs in favor of personal jurisdiction.

28
20

On the fourth factor, the most efficient resolution of the instant case would be possible in this district. This Court has already presided over two cases alleging infringement of two of the same patents at issue in the instant case. *See ooVoo*, 2020 WL 2219036. In those cases, the Court wrote 23 pages construing the term "toolbar," a key claim term. *See ooVoo*, Case No. 17-CV-04488-LHK, ECF No. 156. The Court also wrote 39 pages addressing the validity of two of the patents in the instant case. *See ooVoo*, Case No. 17-CV-04488-LHK, ECF No. 163. Thus, the most efficient resolution of the instant case would be in this district, and the fourth factor weighs in favor of personal jurisdiction.

Finally, on the fifth factor, "[t]here does not appear to be any conflict between the interests of California and any other state, because 'the same body of federal patent law would govern the patent invalidity claim irrespective of the forum.'" *Xilinx*, 848 F.3d at 1356 (quoting *Elecs. for Imaging*, 340 F.3d at 1352). Thus, the fifth factor does not weigh against a finding of personal jurisdiction.

In sum, Defendant "fail[s] to convince [this Court] that this is one of the 'rare' situations in which sufficient minimum contacts exist but where the exercise of jurisdiction would be unreasonable." *Elecs. for Imaging*, 340 F.3d at 1352. Accordingly, the Court concludes that it has personal jurisdiction over Defendant in the instant case.

## IV.     CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss Plaintiff's complaint.

**IT IS SO ORDERED.**

Dated: January 13, 2021

_____
LUCY H. KOH
United States District Judge

Case Nos. 20-CV-04768-LHK
ORDER DENYING MOTION TO DISMISS